ORIGINAL

# In the United States Court of Federal Claims

No. 02-1936 T

(Filed November 8, 2004)

FILED

NOV 8 2004

U.S. COURT OF FEDERAL CLAIMS

*******************************

GUARDIAN INDUSTRIES CORP. AND SUBSIDIARIES, Plaintiff,

v.

THE UNITED STATES, Defendant.

*******************************

## ORDER

By a letter dated November 3, 2004, and received on that date, counsel for plaintiff has provided a copy of Circular Letter, Luxembourg Circular Letter L.I.R. n. 164bis/1 of September 27, 2004, issued by Luxembourg Administration des Contributions Directes (Luxembourg Tax Administration), for consideration by the court in regard to the foreign law issues involved in this litigation. An English translation is also provided. Counsel's letter notes that a copy, with enclosures, has been provided to opposing counsel. The November 3, 2004 letter, with its enclosures, is attached to the original of this Order, which is to be filed in the case docket by the clerk.

Accordingly, it is **ORDERED**:

(1) That the November 3, 2004 letter shall be considered as supplementing the briefs filed by plaintiff in support of the pending dispositive motion;

(2) Leave is **GRANTED** for defendant to file any response addressed to the Circular Letter, on or before December 3, 2004.

James F. Merow
Senior Judge

BAKER & MCKENZIE

Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078, USA

Tel: +1 202 452 7000
Fax: +1 202 452 7074
www.bakernet.com

RECEIVED
NOV 03 2004
CHAMBERS OF
JUDGE JAMES F. MEROW

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe & Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South America
Bogota
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

November 3, 2004

**A. Duane Webber**
**+1 202 452 7040**
a.duane.webber@bakernet.com

**Via Hand Delivery**

Honorable James F. Merow, Senior Judge
United States Court of Federal Claims
717 Madison Place, N.W.
Washington, D.C. 20005

RE: Guardian Industries Corp. and Subsidiaries v. United States
(United States Court of Federal Claims No. 02-1936 T)

Dear Judge Merow:

On September 27, 2004, the Luxembourg Administration des Contributions Directes (the Luxembourg Tax Administration) issued an official Circular Letter, Luxembourg Circular Letter L.I.R. n. 164bis/1 of September 27, 2004 (the "September 27, 2004 Circular" or the "Circular"). This Circular explains in general the application of the Luxembourg corporation income tax or Loi de l'impot sur le revenu ("LIR") with respect to consolidated groups, and in particular, addresses the nature of the liability for the corporation income tax relating to the taxable income of a consolidated group. Pursuant to Rule 44.1 of the Rules of the Court of Federal Claims, attached as Attachment A for the consideration of the Court is a copy of the original September 27, 2004 Circular, together with a certified English translation.

As the briefs of the parties reflect, the Luxembourg tax issue relevant to the resolution of this case is whether the parent of a consolidated group of Luxembourg companies, i.e., the holding company of the group, is "legally liable" for the LIR, or whether the various members of such group are legally liable for that tax. See, e.g., Defendant's Reply Brief in Support of Defendant's Cross-Motion for Summary Judgment, dated August 5, 2004, at 2; Plaintiff's Surreply, dated September 10, 2004, at 2. The Luxembourg tax consultants of the respective parties also each addressed this question. See, e.g., Letter from Mr. Andre Elvinger, dated December 18, 2003, at 10, 14, 17; Report of Prof. Dr. Alain Steichen, styled "The Corporate Income Tax Liability of a Subsidiary in Case of Tax Consolidation," dated May 5, 2003, at 2.

The September 27, 2004 Circular provides additional guidance that may be relevant to this question. Specifically, Plaintiff notes that the following passages in the Circular may relate to the issue of Luxembourg law before the Court:

- "The taxable revenue of the consolidated group, which is taxable for the account of the holding company . . ." Paragraph 1.5.3.

- "During the tax consolidation period, only the holding company is considered to be taxable." Paragraph 1.5.4.1.

- "During the period in which the system is in effect, the holding company alone will be subject to corporate income tax for the overall tax result of the companies covered by the scope of the tax consolidation." "[L]osses can only be carried forward by the holding company given that it is the only entity that can be taxed during the tax consolidation period." Paragraph 1.5.4.2.2.

- "[T]he holding company is the sole entity entitled to claim tax reductions determined in this way, since it alone is considered to be a tax entity during the tax consolidation period." "As with the carrying forward of losses incurred during the tax consolidation period, the tax credit acquired by the consolidated companies during the period in which the tax system is in effect can . . . only be carried forward by the holding company, which is the sole entity that can qualify as a tax entity during the said period." Paragraph 1.5.5.1.1.

- "[D]uring the course of the tax consolidation period, only the holding company is liable to corporate income tax, . . ." Paragraph 1.5.5.2.

- "Under L.I.R. article 164bis 4, the holding company is liable for the corporate income tax which corresponds to the taxable revenue generated by the group as a whole." Paragraph 1.5.7.

Plaintiff trusts that the attached Circular will aid the Court in resolving the Luxembourg law issue that has been briefed by each of the parties and is before the Court for resolution.

Best regards,

Duane Webber

A. Duane Webber

Enclosure (Attachment A)

ADW/gmc

cc: Stuart J. Bassin, Esq. (with enclosure)

DIRECT TAXATION ADMINISTRATION

Memorandum from the director for taxation Income Tax Law (L.I.R. = Loi de l'impôt sur le revenu) no. 164bis/1 of 27 September 2004[1]

L.I.R. no. 164bis/1

Re: Tax consolidation system

- L.I.R.: article 164bis and the Grand-Ducal regulation of 1 July 1981;
- Loi I.C.C.: §2(2)(2).

Contents


1. Tax consolidation system for corporate income tax

1.1. Introduction

1.2. Aim of article 164bis L.I.R.

1.3. Scope of the tax consolidation system

1.4. Conditions associated with the admission to the tax consolidation system

1.4.1. Eligible companies

1.4.2. Companies expressly excluded from the system

1.4.3. Financial consolidation

1.4.3.1. Rate of participation

1.4.3.2. Direct ownership

1.4.3.3. Indirect ownership

1.4.4. Procedure for admission to the system

1.4.5. Minimum duration of the system

1.4.6. Termination of the tax system before the end of the minimum period

1.4.7. Termination of the tax system after the end of the minimum period

1.5. Method of applying the tax consolidation system

1.5.1. Overview

1.5.2. Corrections to be made to the overall tax result of the group

1.5.3. Taxable revenue of the consolidated group

1.5.4. Special expenses


[1] * This circular replaces L.I.R. circular no. 86 of 17 February 1982.

ATTACHMENT A

1.5.4.1. Gifts

1.5.4.2. Losses carried forward

1.5.4.2.1. Outcome of losses incurred before admission to the system

1.5.4.2.2. Outcome of losses incurred during the period in which the system is in effect

1.5.5. Determination of the deductible and payable amounts for the tax assessment of the consolidated group

1.5.5.1. Tax credits

1.5.5.1.1. Tax credits acquired during the period in which the system is in effect

1.5.5.1.2. Tax credits acquired before the period in which the system is in effect

1.5.5.2. Payable taxes

1.5.5.2.1. Taxes deducted locally at source

1.5.5.2.2. Foreign taxes

1.5.6. Deduction hierarchy for the amounts that are deductible and payment for the tax assessment of the consolidated group

1.5.7. Payment of the tax due for the taxable years during which the system is in effect

2. Tax consolidation system with regard to municipal business tax

2.1. Overview

2.2. Determination of the basis for assessing the municipal business tax

2.3. Determination of the municipal business tax payable

3. Tax consolidation system and wealth tax

3.1. Overview

3.2. Reduction of wealth tax payable by the consolidated companies

1. The tax consolidation system for corporate income tax

1.1. Introduction

The tax consolidation system established by L.I.R. article 164 bis was introduced into the corporate income tax law, to take effect as of the 1980 tax year through article 1 of the law of 1 July 1981. Since being introduced, L.I.R. article 164 bis has been amended by:

1) article 2(2) and article 3 of the law of 6 December 1990;
2) article 2(1) of the law of 21 December 2001;
3) article 89(e) of the law of 22 March 2004;
4) article 34(1)(d) of the law of 15 June 2004 and
5) article 2(1) of the law of 9 July 2004.

The Grand-Ducal regulation of 1 July 1981 implementing article 164 bis (5) L.I.R. sets out the manner for applying the tax consolidation system. The aforesaid regulation, which took effect from the 1980 tax year onwards, imposes certain obligations on the parent company and the subsidiaries covered by the tax consolidation. It should also be noted that, pursuant to the amendments made by article 89(e) of the law of 22 March 2004 relating to securitization and article 34(1)(d) of the law of 15 June 2004 on venture capital investment companies, the enabling basis of said regulation is not to be found in paragraph 5 but in paragraph 7 of L.I.R. article 164 bis.

1.2. The aim of L.I.R. article 164 bis

The aim of L.I.R. article 164 bis is to allow groups of companies, under certain conditions, to opt for a type of consolidated tax for all or some of the group companies, without jeopardizing the economic autonomy of the companies involved with regard to corporate law.

The tax consolidation system therefore constitutes an infringement of the tax law rule forbidding any compensation or transfer of results between related companies. In effect, L.I.R. article 164 bis determines that any transfer of profit to a member, partner or interested party constitutes profit distribution which cannot be used to reduce the tax base of the company making the distribution.

1.3. The scope of the tax consolidation system

The aim of L.I.R. article 164 bis is not to establish a legal basis for taxing the consolidated result of a group of companies itself (which must of necessity be determined on the basis of consolidated accounts). It is limited to granting permission to interested companies to group together or offset their tax results during the period in which the tax consolidation system is in effect.

Up to and including the 2001 tax year, L.I.R. article 164 bis(1) stipulated that the subsidiaries to be consolidated should be viewed as permanent establishments of the parent company. Although article 1 of the Grand-Ducal regulation referred to above, which took effect from the 1980 tax year onwards, indicates that this process of assimilation involves determining the taxable income of the group by first grouping together or offsetting the tax results of the subsidiaries and the parent company and then deducting the special expenses for the account of the companies concerned, the formulation of the text of the law allowed for the possibility of an error. In order to eliminate any ambiguity in this respect, article 2(1) of the law of 21 December 2001 amended L.I.R. article 164 bis (1). In the future,

the text of the law will state that the application of the tax consolidation system will result in the tax results of the subsidiaries included under the system being added to the tax result of either the resident parent company or the local permanent establishment of the nonresident parent company.

Paragraph 1of the Grand-Ducal regulation defines "tax result". This is the result as stated on the commercial balance sheet or, where appropriate, the tax report of each of the companies included in the scope of the tax consolidation, after adding nondeductible amounts and deducting non-taxable amounts. It should be noted that the companies included must, of course, comply with the principle of full competition during the tax consolidation period.

1.4. Conditions associated with the approval of the tax consolidation system

1.4.1. Eligible companies

According to first sentence of L.I.R. article 164 bis(1)(1), the tax consolidation system is applicable to resident capital companies that are fully taxable, when at least 95% of the capital is held directly or indirectly by another resident capital company that is fully taxable or by a local permanent establishment of a non-resident capital company that is fully taxable with regard to corporate income tax.

In this respect, it should be pointed out that, up to and including the 2001 tax year, L.I.R. article 164 bis applied only to resident and fully taxable capital companies. Resident capital companies are public limited companies, limited partnerships with shares, and private limited companies of which the statutory offices or principal establishment is located in the Grand Duchy. Said companies are fully taxable if they do not have any personal exemption resulting from L.I.R. article 161 or from a special law.

From the tax year 2002 onwards, article 2(1) of the law of 21 December 2001 made it possible for more companies to qualify, by allowing the holding company to be either a resident and fully taxable capital company or a non-resident and fully taxable capital company for the purposes of corporate income tax, with said company owning the subsidiaries to be consolidated through the intermediary of its local permanent establishment.

The existence of a local permanent establishment can be determined on the basis of the provisions of §16 of the "Steueranpassungsgesetz" - and, in its absence, by referring to the provisions of the double taxation convention between the Grand Duchy and the country in which the company in question resides.

It should be noted that, as far as the subsidiaries are concerned, only resident and fully taxable capital companies are eligible.

1.4.2. Companies expressly excluded from the system

In order to prevent improper tax structures, article 89(e) of the law of 22 March 2004 relating to securitization, as well as article 34(1)(d) of the law of 15 June 2004 relating to venture capital investment companies, exclude securitization organizations and venture capital investment companies (SICAR), respectively, on the basis of the legislation referred to above for applying L.I.R. article 164 bis. These provisions constitute the new paragraphs 5 and 6 of L.I.R. article 164 bis.

1.4.3. Financial consolidation

1.4.3.1. Rate of participation

With respect to financial consolidation, article 164 bis (1) L.I.R. requires the holding company to own, directly or indirectly, at least 95% of the authorized capital of the subsidiary.

When the tax consolidation system was introduced, the ownership limit was set at 99%. Events have shown this limit to be too high, especially when it comes to including sub-subsidiaries of the controlling company. That is why article 2(1) of the law of 21 December 2001 introduced a general decrease of the limit for financial consolidation to 95%, effective as of the 2002 tax year.

Since the 1991 tax year, the tax consolidation system can, nevertheless, be applied in exceptional cases even if the 95% limit for financial consolidation (99% for the tax years preceding 2002) has not been reached, subject to certain conditions. In particular, the holding company must own, directly or indirectly, at least 75% of the authorized capital of the subsidiary, and the minority shareholders representing at least 75% of the capital not owned by the holding company must consent to inclusion in the tax consolidation system. The Minister of Finance must also confirm that participation is particularly suitable for the purposes of promoting the expansion and structural improvement of the national economy. It should be noted that, as of the 2002 tax year, and in order to simplify the administrative procedure, the approval of the Minister of the Economy, which was required during the tax years 1991 to 2001, is no longer required.

The second sentence of article L.I.R. 164 bis (2) states that the condition for financial consolidation should be met without interruption starting at the beginning of the first operating year for which inclusion in the tax consolidation system has been requested. If the status of a holding in a subsidiary switches from direct to indirect or vice-versa, this will not have any effect on the application of the system as long as the ownership limit (direct or indirect) does not fall below 95% at any time. Otherwise, under article 1(1) of the Grand-Ducal regulation referred to above, the subsidiaries and the holding company must open and close their financial years on the same dates. This means, in particular, that when a subsidiary is founded, the tax consolidation system can in principle only take effect at the beginning of the accounting year following the financial year in which the subsidiary is founded.

1.4.3.2. Direct ownership

In general, a direct holding means that the holding is not owned through an intermediary. From this point of view, the administration has always considered the ownership of a holding through the intermediary of a fiscally transparent company to be indirect ownership.

Pursuant to the amendments introduced by the law of 21 December 2001, L.I.R. article 164 bis (1)(2) specifies that the ownership of a holding through the intermediary of one of the organizations referred to in L.I.R. article 175(1) (namely, commercial partnerships, limited partnerships, joint ventures, European economic interest groupings, and non-commercial partnerships) should be considered to be direct ownership in proportion to the level of ownership of the net invested assets of the organization. In fact, the provision targets all resident or non-resident organizations that can be considered to be transparent in the sense of Luxembourg tax law.

1.4.3.3. Indirect ownership

Up to and including the 2003 tax year, a resident capital company owned indirectly through a non-resident capital company which is a subsidiary or sub-subsidiary of a resident capital company was not considered to be eligible.

As of the 2004 tax year, article 2(1) of the law of 9 July 2004 extends the scope of L.I.R. article 164 bis by allowing the tax consolidation system to be used for resident and fully taxable capital companies owned indirectly through a non-resident and fully taxable capital company for the purposes of a tax that corresponds to a comparable corporate tax.

The commentary accompanying article 2(1) of the law referred to above specifies that a tax corresponding to the Luxembourg corporate income tax is "a tax collected by the public authority that must be paid at an effective tax rate not less than half of the tax rate for Luxembourg corporate income tax, which is currently 11%, i.e. assessed on a similar basis, in accordance with rules and criteria that are comparable to those which apply in Luxembourg."

Example 1:

M is a Belgian resident capital company that owns the following holdings through its local permanent establishment:

- 99 % of the resident capital company F1;
- 60 % of the resident commercial partnership F2;
- 80 % of the German capital company F3.

F1 has a 75% holding in the resident capital company F4.

F2 has a 10% holding in the resident capital company F4.

F3 has a 40% holding in the resident commercial partnership F2 and a 15% holding in the resident capital company F4.



M's local permanent establishment owns:

- a direct 99% holding in F1;
- a direct holding (60% x 10%/100) and an indirect holding [(99% x 75%/100) + (80% x 40%/100 x 10%/100) + (80% x 15%/100)] of 95.45% in F4.

Consequently, F1 and F4 can therefore be consolidated into M's local permanent establishment.

1.4.4. Procedure for admission to the system

Since the introduction of L.I.R. article 164 bis, admission to the tax consolidation system depended on the subsidiaries being consolidated from the financial, economic and organizational points of view in the controlling company and on the approval of the Minister of Finance. As of the 2002 tax year, it is necessary and sufficient for companies that apply for the application of L.I.R. article 164 bis to be consolidated from the financial point of view, in other words, for the holding company to own directly or indirectly at least 95% in the subsidiary or subsidiaries to be consolidated.

The elimination of the criteria of economic and organizational consolidation has made it possible to dispense with the ministerial approval required until now and, therefore, to facilitate the procedure for admission to the tax consolidation system. In the future, it will be enough for the companies concerned to submit a joint written request to the direct tax authority before the end of the first financial year of the period covered by the application. Although the text of the statute does not expressly state which department this application should be sent to, it effectively refers to the tax office that deals with the tax of the holding company. The latter assesses the application and informs the companies in question, as well as the tax office(s) that deal(s) with the tax of the subsidiary or subsidiaries, whether or not the conditions of L.I.R. article 164 bis have been met.

It should be noted that in cases where financial consolidation exceeds 75%, without reaching 95%, L.I.R. article 164 bis applies only if the Minister of Finance also confirms that that inclusion is particularly suitable for the purposes of promoting the expansion and structural improvement of the national economy and if the minority shareholders representing at least 75% of the capital not owned by the holding company or the local permanent establishment consent to inclusion in the system.

1.4.5. Minimum duration of the system

Under article 164 bis (4) L.I.R., admission to the tax consolidation system is subject to the condition that the companies in question submit to the system for a period of at least five operating years. The system will be prolonged by tacit approval unless the companies involved waive its application or unless one of the conditions for application is not fulfilled.

1.4.6. Termination of the tax system before the end of the minimum period

If the companies involved waive the application of the tax consolidation system or if one of the conditions provided for in L.I.R. article 164 bis and the Grand-Ducal regulation adopted in implementation thereof is in effect no longer satisfied during the minimum period, the tax consolidation system will be refused retrospectively in accordance with the provisions of article L.I.R. 164 bis (4) and of §4(1) of the tax adaptation law. A bulletin which has already been issued will

be rectified on the basis of the combined provisions of §4(2) of the tax adaptation law and of §225 of the general taxation law, "Abgabenordnung". It should be noted that in the cases referred to above, the provision takes effect starting on 1 January after the year in which the condition resulting in the termination of the application of the system takes effect.

1.4.7. Termination of the tax system after the end of the minimum period

When companies waive the application of the tax consolidation system after five years of operation or if a condition resulting in admission to the system is no longer satisfied after the completion of the minimum period, the tax system will end starting at the beginning of the accounting year in which the condition resulting in the termination of the application of the system takes effect.

1.5. Method of applying the tax consolidation system

1.5.1. Overview

As indicated above, companies requesting the application of L.I.R. article 164 bis must open and close their accounting years on the same date. Every company in the group must determine its own tax result and submit tax determinations that allow for the calculation of the tax that it would be required to pay if it were not consolidated. The tax results of the various companies are obtained on the basis of the results as shown on the commercial balance sheet or the tax balance sheets after adding non-deductible amounts and deducting non-taxable amounts. The holding company must also draw up a tax determination that groups together, or offsets, its own tax result with or against each of the consolidated subsidiaries or sub-subsidiaries.

1.5.2. Corrections to be made to the overall tax result of the group

The application of the tax consolidation system may result in a double levy or a double deduction. The last sentence of §1 of the Grand-Ducal regulation provides for the neutralization of this effect by making an adequate correction to the overall result of the group. An example of a double deduction is the establishment by the holding company of a provision for the depreciation of the securities of its consolidated subsidiaries. The establishment of a provision of this kind would indeed result in a double deduction as soon as the holding company adds the results of its subsidiaries or sub-subsidiaries to its own result. This provision must therefore be transferred to the group's consolidated profit. Similarly, the holding company must reincorporate the depreciation provision established by a subsidiary for the securities held by this subsidiary in a sub-subsidiary, inasmuch as these companies are both part of the consolidated group.

The above arrangement is, nevertheless, intended solely to neutralize the effects resulting from the application of the system, but not those that are inherent to the usual system of double economic taxation as it is practiced, albeit in a limited form, in Luxembourg. In this way, for example, when L.I.R. article 164 bis applies, and a consolidated subsidiary distributes a dividend to the holding company or to another subsidiary that is part of the same consolidated group, and when the holding owned by the parent company or the subsidiary in the distributing company does not fulfill the conditions of L.I.R. article 166, the dividend remains taxable, subject to the application of L.I.R. article 115(15)(a), for the account of the respective members.

Example 2:

The capital company M has a 100% holding in capital company F1 and a 5% holding in capital company F2. F1 has a 95% holding in F2.




F1 and F2 are consolidated into M, which has a direct or indirect holding of at least 95% in F1 and in F2.

During the tax consolidation period, F2 distributes a gross dividend of € 10,000 (€ 9,500 to F1 and € 500 to M). When it is made payable, the dividend payable to M is subject to taxation at source of 20% under L.I.R. article 146. The dividend payable to F1 is exempt from taxation at source in accordance with L.I.R. article 147. With respect to F1, the dividend of € 9,500 is not part of the tax result since it is exempt under L.I.R. article 166. With respect to M, 50% of the dividend of € 500 is exempt under L.I.R. article 115(15)(a) and is therefore included in the tax result for this company in the amount of € 250.

The dividend allocated to M is therefore included in the overall tax result for the group in the amount of € 250. No correction needs to be made to the overall tax result of the group. In this context, it is not very important whether the distribution of the profit relates to an accounting year during the tax consolidation period or not.

1.5.3. Taxable revenue of the consolidated group

The taxable revenue of the consolidated group, which is taxable for the account of the holding company, will ultimately be established by deducting special expenses (such as gifts and losses carried forward) charged to the various companies covered by the scope of the tax consolidation from the overall tax result of the group.

1.5.4. Special expenses

1.5.4.1. Gifts

The deduction of gifts is limited by L.I.R. articles 109(1)(3) and 112, as well as by the Grand-Ducal regulation of 18 March 1990 implementing L.I.R. article 112(2). During the tax consolidation period, only the holding company is considered to be taxable. Consequently, the amount for the deductible

gifts should be made with regard to the latter. For this purpose, the gifts in the sense of L.I.R. article 112 paid by the various consolidated companies are first grouped together. The deductible amount is then determined as special expenses for the account of the holding company, taking into account the limits set by L.I.R. article 109 and by article 1 of the Grand-Ducal regulation of 18 March 1990.

Example 3:

The capital company M has a 95% holding in the capital company F. F is consolidated into M. For the 2004 tax year, M's tax result (commercial profit + non-deductible amounts – non-taxable amounts) is € 100,000 and that of F is – € 40,000. M has made a cash gift of € 5000 to the public institution for higher education and research known as the University of Luxembourg. F has made a cash gift of € 1100 to the National Research Fund. M and F have not incurred any other special expenses during the tax year under consideration.

| | | |
|---|---|---|
| Total revenue of the consolidated companies: | 100,000 + (- 40,000) = | € 60,000 |
| Sum of the gifts of the consolidated companies to be handled as special expenses (L.I.R. article 112): | 5,000 + 1,100 = | € 6,100 |
| Maximum deductible amount (article 109(1)(3) L.I.R.): | 60,000 x 10% = | € 6,000 |
| Taxable revenue of the group: | 60,000 – 6,000 = | € 54,000 |

1.5.4.2. Losses carried forward

1.5.4.2.1. Losses incurred before admission to the system

Article 1(2) of the Grand-Ducal regulation provides for carrying forward losses incurred by a company before admission to the tax consolidation system. The losses in question can be carried forward for the purposes of determining the taxable revenue of the group subject to the conditions of L.I.R. article 114, but only to the extent that the company that has incurred them achieves a profit. This restriction results from L.I.R. article 114(3), which states that only the entity which has incurred a loss can deduct it. In particular, as far as the losses incurred by a local permanent establishment are concerned, it should be pointed out that they can only be carried forward if they are established on the basis of separate accounts held by the parent company for the activity exercised by said local permanent establishment.

Example 4:

The capital company M and its two subsidiaries F1 and F2 constitute a consolidated group in the sense of L.I.R. article 164 bis starting in the 2004 tax year.

Let us suppose that subsidiary F1 has carried forward losses for the 2001 tax year amounting to € 190,000.

For the 2004 tax year, M's tax result is € 1,000,000, F1's tax result is € 100,000 and F2's tax result is – € 300,000. No other special expenses have been charged to the three companies.

| | |
|---|---|
| Tax result M: | € 1,000,000 |
| + tax result F1: | € 100,000 |
| + tax result F2: | - € 300,000 |

| | |
|---|---|
| = overall tax result for the group: | € 800,000 |

The consolidated group can deduct the loss of F1 carried forward from this tax result, but only after offsetting it against the positive result of F1, namely € 100,000.

| | |
|---|---|
| - loss for F1 carried forward: | € 100,000 |
| = taxable revenue of the group: | € 700,000 |

For future tax years, F1 therefore has losses carried forward from the 2001 tax year of 190,000 – 100,000 = 90,000 €.

1.5.4.2.2. Outcome of losses incurred during the period in which the system is in effect

During the period in which the system is in effect, the holding company alone will be subject to corporate income tax for the overall tax result of the companies covered by the scope of the tax consolidation. When the overall tax result for the group is negative, this loss, which can be carried forward subject to the conditions of L.I.R. article 114, is deductible from the overall tax result obtained by the consolidated companies during subsequent years that is taxable for the account of the holding company. In accordance with the same principle, article 1(3) of the Grand-Ducal regulation, which regulates the carry forward of losses incurred during the tax consolidation period in the case of a return to the individual taxing system, states that these losses can only be carried forward by the holding company given the fact that it is the only entity that can be taxed during the tax consolidation period.

Example 5:

The capital company M and its two subsidiaries F1 and F2 constitute a consolidated group in the sense of L.I.R. article 164 bis during the tax years of 1999 through 2003.

Let us suppose that the overall tax result for the group (which is taxable through M) is - € 500,000 for the 2002 tax year (tax result for F1: € 100,000; tax result for F2: - € 50,000; tax result for M: - € 550,000) and € 260,000 for the 2003 tax year (tax result for F1: € 400,000; tax result for F2: - € 100,000; tax result for M: - € 40,000).

During the 2004 tax year, the tax result for M is € 100,000, € 50,000 for F1 and € 60,000 for F2.

M, F1 and F2 have not incurred any other special expenses during the tax years 2002 to 2004.

Determination of M's taxable revenue for the 2004 tax year:

| | |
|---|---|
| 2002: overall tax result for the group: | - € 500,000 |
| - special expenses: | € 0 |
| = taxable revenue of the group | - € 500,000 |
| 2003: overall tax result for the group: | € 260,000 |
| - special expenses: | - € 260,000 |

| | |
|---|---|
| = taxable revenue of the group | 0 € |
| Remaining loss carried forward: | € 240,000 |
| 2004: tax result for M: | € 100,000 |
| - special expenses: | € 100,000 |
| = M's taxable revenue | € 0 |
| Remaining loss carried forward: | € 140,000 |

The excess of the loss carried forward for the year 2002 (€ 140,000) cannot be deducted from subsidiaries F1 and F2.

1.5.5. Determination of the deductible and payable amounts for the tax assessment of the consolidated group

1.5.5.1. Tax credits

At present, there are five tax credit categories:

- tax credit for audiovisual investments (amended law of 13.12.1988);
- tax credit for venture capital investments (amended law of 22.12.1993);
- tax credit for investments (L.I.R. article 152 bis);
- tax credit for employing the unemployed (amended law of 24.12.1996), and
- tax credit for continuing-education expenses (amended law of 22.6.1999).

Whereas the first two credits can only be deducted from corporate income tax (plus the contribution to the employment fund) due for the tax year during which the investment was made, the last three can, if the amount of tax is insufficient, be deducted from the tax during the 10 subsequent tax years.

1.5.5.1.1. Tax credits acquired during the period in which the system applies

During the period in which the system is in effect, each consolidated company must determine the amount of any tax credit as if it were not part of the consolidated group. In other words, it must determine the tax credit relating to its own investments or expenditures during the financial year in question. Nevertheless, the holding company is the sole entity entitled to claim tax reductions determined in this way, since it alone is considered to be a tax entity during the tax consolidation period.

As a result, the first step is to group the tax credits for the various companies of the consolidated group according to category and age at the level of the holding company. The amount to be deducted from the tax payable by the holding company is then determined by taking into account the fact that tax credits for venture capital investments and audiovisual investments (which are non-cumulative) have priority when there are several deductions to be made, given the fact that they can be neither returned

nor carried forward.

If the amount of tax is inadequate, the tax credits that can be carried forward, (in other words, the tax credit for investment, the tax credit for employing the unemployed, and the tax credit for continuing-education expenses) can be deducted from the tax payable by the holding company during the next ten tax years.

For this purpose, it does not matter whether the companies remain consolidated during the following 10 years or not. As with the carrying forward of losses incurred during the tax consolidation period, the tax credit acquired by the consolidated companies during the period in which the tax system is in effect can, if there is a return to the individual tax system, only be carried forward by the holding company, which is the sole entity that can qualify as a tax entity during the said period.

1.5.5.1.2. <u>Tax credits acquired before the period in which the system is in effect</u>

The tax credit acquired by the various members of the consolidated group before the period in which the tax consolidation system is in effect can be carried forward by the holding company up to the limit of the hypothetical tax that would be payable by the individual members if they were not covered by the system.

Here, it matters little whether the tax effectively payable by the holding company on the basis of the taxable revenue of the consolidated group is less than the sum of the tax credits determined in this way; any excess can be carried forward by the holding company in accordance with L.I.R. article 152bis, the amended law of 24.12.1996 or the amended law of 22.6.1999.

If, at the end of the tax consolidation period, there are still tax credits carried forward that have been acquired before the period of application of L.I.R. article 164bis and that have proved impossible to transfer to the holding company, this amount carried forward can still be carried forward by the company concerned.

<u>Example 6:</u>

The capital company M and its subsidiary, the capital company F, constitute a consolidated group in the terms of L.I.R. article 164bis for the tax years 1999 to 2004. When the tax consolidation system takes effect, M and F have tax reductions for investment carried forward (L.I.R. article 152bis) from 1998 for € 90,000 and 80,000 respectively.

During the tax years 1999 to 2003, the tax results of M and F are negative. The accumulated negative tax results for this period are € 100,000 for M and € 300,000 for F. This means that M, which is taxable for the purposes of the revenue generated by the group, can carry forward overall losses amounting to € 100,000 + € 300,000 = € 400,000 for the 2004 tax year.

For the 2004 tax year, the tax results for M and F are € 600,000 and € 500,000 respectively.

Levy for 2004:

| | | |
|---|---|---|
| Overall tax result for the group: | 600,000+ 500,000 | = 1,100,000 |
| - losses that can be carried forward for the group (1999 - 2003): | | 400,000 |

| | |
|---|---|
| = taxable revenue for the group: | 700,000 |
| tax due under article 174 L.I.R.: | 154,000 |
| + employment fund: | 6,160 |
| = amount due: | 160,160 |
| - tax credits carried forward (see calculation below*): | 135,760 |
| = amount for deduction: | 24,400 |

* Determination of credits carried forward that can be deducted from the assessment due for 2004
Calculation of tax payable by M and F if they were not consolidated:

| | M | F |
|---|---|---|
| tax result: | 600.000 | 500.000 |
| - deferrable losses: | 100,000 | 300,000 |
| taxable revenue: | 500,000 | 200,000 |
| tax due under article 174 L.I.R.: | 110,000 | 44,000 |
| + employment fund: | 4,400 | 1,760 |
| = amount due: | 114,400 | 45,760 |

tax credits carried forward that can be deducted for the account of the group:

| | |
|---|---|
| Tax credit deductible by M: | 90,000 |
| + tax credit deductible by F: | 45,760 |
| Total: | € 135,760 |

F therefore has a remaining tax credit carried forward for 1998 amounting to (80,000 –

If, in the example above, the tax assessments of the group and of M were € 0 and € 45,760 for F, M could have carried forward and deducted this amount from the tax due for the tax years 2005 to 2008, whether or not the companies had been consolidated during said period.

1.5.5.2. Payable taxes

Since, during the course of the tax consolidation period, only the holding company is liable to corporate income tax, either as a resident taxpayer or as a non-resident taxpayer as a result of its local permanent establishment, the payable or deductible amount of any foreign tax charged to the consolidated companies, as well as the payable or refundable amount of any tax deducted locally at source, should be determined for the account of the holding company.

1.5.5.2.1. Taxes deducted locally at source

At present, Luxembourg deducts the following taxes at source:

1. tax on income and pensions (article 136 L.I.R.);
2. tax on capital income (article146 L.I.R.);
3. tax on literary and artistic activities and on professional sporting activities (L.I.R.

article 152, Title 1), and

4. management bonus (L.I.R. article 152, Title 2).

With respect to capital companies, the only relevant taxes are of the tax on capital income and the management bonus. Under L.I.R. article 154, said taxes should be included in the tax payable by the holding company. If the tax payable is less than the tax deducted at source, the excess tax deducted should be repaid.

1.5.5.2.2. Foreign taxes

L.I.R. articles 13, 134bis and 134ter, as well as the regulations implementing them, include the provisions for the determination of the portion of foreign tax that can be allocated to the Luxembourg tax assessment. To the extent that the foreign tax is more than the portion of foreign tax that can be allocated, the excess is deductible as an operating expense or acquisition expense in the different net revenue categories.

1.5.6. Deduction hierarchy for the amounts that are deductible and payable for the tax assessment of the consolidated group

Because of the interaction between the portion of foreign tax that can be allocated to the Luxembourg tax assessment and the portion deductible as an operating expense or acquisition expense in the different net revenue categories, the deduction of the portion of foreign tax payable to the Luxembourg tax assessment should have priority over other deductions and allocations.

Nevertheless, there are two exceptions to this principle. The amended laws of 31.12.1988 and 22.12.1993 state that the tax reduction for venture capital investments and the tax reduction for audiovisual investments (which are non-cumulative) have priority when there are competing allocations. The reason is that these reductions can neither be returned or carried forward, so that if the tax assessment is less than the sum of these reductions, the excess will be lost forever.

If the amount of tax on the remainder after deducting either a tax reduction for venture capital investments or a tax reduction for audiovisual investments is less than the portion of payable foreign tax determined by the application of the provisions of L.I.R articles 13, 134bis and 134ter, and of the regulations implementing them, the amount of foreign tax that is payable will be limited to this amount.

After deducting the allocation of either one of tax credits referred to above or of the payable portion of the foreign tax, the tax credits that can be carried forward (in other words, the tax credit for investment, the tax credit for employing the unemployed, and the tax credit for continuing-education expenses) must be deducted where appropriate. The deduction of said reductions takes place in the order of the tax years to which they relate.

The taxes deducted locally at source come last in the hierarchical order of the various sums that can be deducted from or allocated to the tax assessment. If, where appropriate, after the deduction or allocation of the various tax credits or of the payable portion of the foreign tax, the amount due is less than the local deducted taxes, the excess will be repaid.

Example 7:

The resident capital company F has been consolidated into the capital company M since the 2004 tax year. For the 2004 tax year, the tax results of M and of F are as follows:

| | M | F |
|---|---|---|
| Profit (based on tax balance sheet): | 2,100,000 | - 400,000 |
| + tax deducted for the Luxembourg capital income: | 1,000 | |
| + foreign tax that is payable under a double | | |
| taxation convention or | | 1,000 |
| pursuant to article 134bis L.I.R.: | 20,000 | |
| + corporate income tax: | 250,000 | |
| + municipal business tax: | 140,000 | |
| + wealth tax: | 10,000 | |
| + expenses incurred for cultural or | 2,000 | 3,000 |
| charitable purposes, or for the common good: | | |
| - exempt revenue from major holdings: | 100,000 | |
| - revenue exempt under article 115, no.15a: | 2,500 | |
| tax result: | 2,420,500 | - 396,000 |

Information relating to M:

1. the tax deducted locally refers to the dividend received from a fully taxable capital company;
2. the foreign tax refers to a profit of € 100,000 generated by M's permanent establishment in State A with which Luxembourg has no double taxation convention (rate: 20%);
3. during the 2004 financial year, M donated € 2000 to the Luxembourg Red Cross;
4. the exempt revenue of € 100,000 is a dividend paid to a resident capital company in which M has had a holding of 15 % for three years;
5. M is entitled to an investment tax credit (article 152bis L.I.R.) of € 10,000 for the 2004 tax year;
6. M has a loss carried forward of € 500,000 from the 2000 tax year and an investment tax credit carried forward of € 50,000 from the year 2001.

Information relating to F:

1. the payable foreign tax refers to a gross dividend of € 20,000 from a subsidiary resident in State A (rate: 5 %);
2. F donated € 3000 during the 2004 financial year to the Luxembourg Olympic

Committee;

3. F is entitled to an investment tax credit (article 152bis L.I.R.) of € 5,000 for the 2004 tax year;

4. F has a loss carried forward of € 15,000 for the 2001 tax year.

| | | |
|---|---|---|
| Overall tax result: | 2,420,500 + (- 396,000) = | 2,024,500 |
| - gifts (articles 109(1)(3) + 112 L.I.R.): | 2,000 + 3,000 = | 5,000 |
| - losses carried forward: | 500,000 + 0 = | 500,000 |
| = taxable revenue for the group: | | 1,519,500 |

Allocation of foreign tax paid to State A:

i = R x t/(1 - t) (formula based on the provisions of the Grand-Ducal regulation of 26.5.1979 implementing article 13(2) L.I.R.)

R = (100,000 – 20,000) + (20,000 – 1,000) = 99,000 Payable portion: i = 99,000 x 0.2288/0.7712 = 29,371.37

→ Payable foreign tax: 20,000 + 1,000 = 21,000

| | |
|---|---|
| tax due under article 174 L.I.R.: | 334,290 |
| + employment fund: | 13,371 |
| amount due: | 347,661 |
| - payable foreign tax: | 21,000 |
| - tax credit that can be carried forward | 50,000 |
| - tax reduction for the financial year: | 15,000 |
| - deducted for local capital income: | 1,000 |
| = amount for deduction: | 260,661 |

2001 loss to be carried forward by F: € 15,000

* Determination of the credit carried forward that can be deducted from the assessment due for 2004: tax payable by M if it was not covered by the tax consolidation system:

| | |
|---|---|
| tax result for M: | 2,420,500 |
| - gifts: | 2,000 |
| - loss that can be carried forward: | 500,000 |
| = taxable revenue: | 1,918,500 |

tax due under article174 L.I.R.: 422,070

| | |
|---|---|
| + employment fund: | 16,882.80 |
| = amount due: | 438,952.80 |

Deductible tax credits carried forward for the account of the group: € 50,000.

1.5.7. Payment of the tax due for the taxable years during which the system is in effect

Under L.I.R. article 164bis (4), the holding company is liable for the corporate income tax which corresponds to the taxable revenue generated by the group as a whole. The holding company must also pay, at the intervals stated in L.I.R. article 135, the advance corporate income tax calculated on the basis of the accumulated taxable revenue of the group.

2. Tax consolidation system with regard to municipal business tax

2.1. Overview

With respect to municipal business tax, the tax consolidation system "Organschaft" is related to §2(2) 2 of the amended statute of 1 December 1936 regarding municipal business tax. In this respect, it should be pointed out that before and during the 2001 tax year, it was entirely conceivable for enterprises to be consolidated for municipal business tax purposes without being consolidated for the purposes of corporate income tax.

Among other things, article 6(1) of the law of 21 December 2001 brought the tax consolidation system in the area of municipal business tax into line with the system for corporate income tax. Since then, in order to be admitted to the tax consolidation system in application of L.I.R. article 164bis, it has been necessary and sufficient for companies to also be consolidated for the purposes of municipal business tax. For more details specifically relating to the provisions that apply during a transitional period to the enterprises which were consolidated for the purposes of municipal business tax without being consolidated for the purposes of corporate income tax, the reader is referred to memorandum I.C.C. no. 37 of 12 September 2003.

2.2. Determination of the tax basis for the purposes of municipal business tax

With respect to municipal business tax, the operating profit corresponds to the profit as determined in accordance with the provisions of the income tax law, after adding or deducting the amounts referred to in §8 and §9 of the municipal business tax law and deducting the losses that can be carried forward in the terms of §9bis of the same law.

It therefore results that, when there is tax consolidation, the operating profit of the consolidated group is obtained on the basis of the total tax results of the companies involved as determined for the account of the holding company for the purposes of corporate income tax, and by adding or deducting the amounts referred to in §8 and §9 of the municipal business tax law and after deducting from them, where appropriate, the losses carried forward in accordance with §9bis of the same statute.

The additions and deductions referred to in §8 and §9 of the municipal business tax law relate to the amount taken into consideration when determining the total tax results for the consolidated group, the

impact of which should be rendered neutral for the determination of the municipal business tax that is due. Paragraph 9bis of the statute referred to above regulates the losses carried forward. With respect to both municipal business tax and corporate income tax, only the taxpayer who has incurred the loss can deduct it. The losses generated by the various companies before the application of the tax consolidation system are therefore only deductible from the profits made by the company that has incurred them.

With respect to losses incurred during the tax consolidation period which are obtained by offsetting through the holding company the tax results of each of the companies making up the consolidated group and by adjusting this amount where appropriate by applying the provisions of §8 and §9 of the municipal business tax law, the holding company is the sole entity entitled to deduct them since it alone can be considered to be a tax entity during the tax consolidation period.

The total tax results of the consolidated group, after the addition or reduction of the amounts referred to in §8, §9 and §9bis of the municipal business tax law will, where appropriate, be rounded off to the lower multiple of € 50 and reduced to the limit of an allowance € 17,500. The tax basis for the purposes of municipal business tax corresponds to the operating profit adjusted in this way and multiplied by 3%.

2.3. Determination of the municipal business tax payable

Paragraph 2 (2) 2 of the business tax law states that, in the case of the application of the tax consolidation system, the controlled company should be considered, for the purposes of the allocation of the basis to the municipalities concerned, to be a permanent establishment of the controlling company.

As a result, there is justification for allocating the overall assessment basis for the consolidated group in accordance with the provisions of the amended statute of 1 March 1952 and of the amended Grand-Ducal regulation of 20 April 1962. The municipal business tax that is due is obtained by multiplying the shares of the overall tax basis allocated to the various municipalities covered by the applicable municipal rate. For more details, the reader is referred to circular ICC no. 36 of 19 May 2000.

3. Tax consolidation system and wealth tax

3.1. Overview

The wealth tax law does not include any provisions that allow groups of companies to opt for the "consolidation" of their taxable wealth. As a result, every company that is a part of a consolidated group for the purposes of corporate income tax and for the purposes of municipal business tax remains liable to wealth tax on its own taxable wealth.

3.2. Reduction of wealth tax payable by consolidated companies

Nevertheless, the tax consolidation system does have an effect on wealth tax payable by the various companies of a consolidated group. Indeed, after the introduction, with effect from the general basis for assessment on 1.1.2002 onwards, of §8a in the wealth tax law, capital companies can receive, in certain circumstances, a reduction of the wealth tax payable for a given tax year. In this way, companies that agree to add a reserve to their balance sheet that is allocated to the profit for a specific tax year and that will be maintained for the next five tax years will receive a reduction on wealth tax

of 1/5 of the reserve established, without, however, exceeding the amount of the corporate income tax, plus the contribution to the employment fund, payable prior to any allocations relating to the same tax year.

During the tax consolidation period, only the holding company can be considered to be a tax entity for the purposes of corporate income tax so that, strictly speaking, no consolidated subsidiary can receive a reduction on wealth tax during the application of the system. However, this is not the case since §8a(5) of the wealth tax law states that, when the tax consolidation system applies, a general reduction of wealth tax at the level of the different group companies cannot exceed the amount paid in corporate income tax, including the contribution to the employment fund, payable before allocations made by the group. It will therefore be clear that §8a of the wealth tax law applies to each of the companies of a consolidated group. In this context, it must still be made clear who can or should establish the reserve required by a company of the consolidated group corresponding to five times the reduction of the wealth tax. At first sight, several solutions would appear to be possible: the holding company, each company up to the limit of five times the reduction in wealth tax that has been applied for, or each company in accordance with its profits or available reserves.

§8a of the wealth tax law adopts the third solution. As a result, when there is tax consolidation, the reserve of five times the wealth tax reduction requested by the various companies making up a consolidated group can be established through the balance sheets of the different companies in the group. Consequently, it is quite possible for a consolidated company which would not have been able to apply for a reduction in wealth tax if it had been taxed under the normal system to be entitled to do so because the reserve amounting to five times the requested reduction has been established by another company of the consolidated group.

In order to make it possible to monitor the use made of the various reserves, it is indispensable for the companies in question to allocate the reserves to the tax years for which a reduction in wealth tax has been requested and to the various companies on behalf of which the reduction has been requested if a consolidated company establishes the reserve on behalf of another company in the group. Indeed, if the company has been able to dispose in part over any of the reserves established before the five-year period during a given tax year, the corresponding reduction of this reserve will mean that the wealth tax assessment for the tax year in question will be increased for the company concerned by five times the amount of the reserve used. More particularly, with respect to the provisions of § 8a of the wealth tax law, the reader is referred to item 3 of the circular Eval. no. 51/I. Fort. no. 42 of 10 October 2002.

Example 8:

Let us return to the data used in example 7.

M applies for a reduction in wealth tax of € 50,000 on 1.1.2004 and therefore undertakes to establish a reserve of € 250,000 that is allocated to the profit for 2004 in its balance sheet for 2005. F applies for a reduction in wealth tax of € 1000. Since F does not have any free reserves and since it has incurred a loss during the 2004 tax year, M undertakes to establish the reserve corresponding to 5 times the reduction in wealth tax requested by F that is allocated to the profit for 2004 in its own balance sheet for 2005.

| | |
|---|---|
| Overall reduction requested for wealth tax: | € 51,000 |
| Corporate income tax due for the 2004 tax year: | € 347,661 |

| | |
|---|---|
| Reserve established by M (including 5,000 for F): | € 255,000 |
| Reduction in wealth tax on 1.1.2004 on behalf of M: | € 50,000 |
| - on behalf of F: | € 1,000 |
| | € 51,000 |

Luxembourg, September 27, 2004

The director for taxation

BURG translations, inc.

BURG Translations, Inc.

29 South LaSalle Street
Suite 936
Chicago IL 60603 USA

1800.959.burg (2874)
312.263.3379
312.263.4325 fax

burg@burgtranslations.com
www.burgtranslations.com

November 1, 2004

I, Lodovico Passalacqua, having been duly sworn, depose and say that the attached translation of the document entitled MEMORANDUM FROM THE DIRECTOR FOR TAXATION – INCOME TAX LAW (L.I.R.) NO. 164BIS/1 OF SEPTEMBER 27, 2004 has been revised in English by Burg Translations, Inc., and that, according to the best of my knowledge and belief, it is a true and accurate rendering of the original French document.

Lodovico Passalacqua, Manager

Subscribed and sworn before me on
November 1, 2004

"OFFICIAL SEAL"
John R. Emerzian
Notary Public, State of Illinois
My Commission Expires Jan. 11, 2007

John R. Emerzian, Notary Public

**DIRECTION**
**DES**
**CONTRIBUTIONS DIRECTES**

Circulaire du directeur des contributions
L.I.R. n° 164bis/1 du 27 septembre 2004*

L.I.R. n° 164bis/1

**Objet: Le régime d'intégration fiscale**
- **L.I.R.: article 164bis et règlement grand-ducal du 1er juillet 1981;**
- **Loi I.C.C.: paragraphe 2, alinéa 2, numéro 2.**

Sommaire

1. Le régime d'intégration fiscale en matière d'impôt sur le revenu des collectivités
1.1. Introduction
1.2. L'objectif de l'article 164bis L.I.R.
1.3. La portée du régime d'intégration fiscale
1.4. Les conditions liées à l'octroi du régime d'intégration fiscale
1.4.1. Les sociétés éligibles
1.4.2. Les sociétés formellement exclues du régime
1.4.3. L'intégration financière
1.4.3.1. Le taux de participation
1.4.3.2. La détention directe
1.4.3.3. La détention indirecte
1.4.4. La procédure d'octroi du régime
1.4.5. La durée minimum du régime
1.4.6. La perte du régime fiscal avant l'expiration de la période minimale
1.4.7. La perte du régime fiscal après l'expiration de la période minimale
1.5. Les modalités d'application du régime d'intégration fiscale
1.5.1. Généralités
1.5.2. Les corrections à apporter au résultat fiscal global du groupe
1.5.3. Le revenu imposable du groupe intégré

* La présente circulaire remplace la circulaire L.I.R. n° 86 du 17 février 1982.

1.5.4. Les dépenses spéciales

1.5.4.1. Les libéralités

1.5.4.2. Les pertes reportables

1.5.4.2.1. Le sort des pertes essuyées avant l'admission au régime

1.5.4.2.2. Le sort des pertes essuyées au cours de la période d'application du régime

1.5.5. La détermination des montants déductibles et imputables de la cote d'impôt du groupe intégré

1.5.5.1. Les bonifications d'impôt

1.5.5.1.1. Les bonifications d'impôt acquises pendant la période d'application du régime

1.5.5.1.2. Les bonifications d'impôt acquises avant la période d'application du régime

1.5.5.2. Les impôts imputables

1.5.5.2.1. Les retenues d'impôt à la source indigènes

1.5.5.2.2. Les impôts étrangers

1.5.6. L'ordre de déduction des montants déductibles et imputables de la cote d'impôt du groupe intégré

1.5.7. Le paiement de l'impôt dû pour les années d'imposition pendant lesquelles le régime est applicable

2. Le régime d'intégration fiscale en matière d'impôt commercial communal

2.1. Généralités

2.2. La détermination de la base d'assiette de l'impôt commercial communal

2.3. La détermination de l'impôt commercial communal dû

3. Le régime d'intégration fiscale et l'impôt sur la fortune

3.1. Généralités

3.2. La réduction de l'impôt sur la fortune dû par les sociétés intégrées

1. Le régime d'intégration fiscale en matière d'impôt sur le revenu des collectivités

1.1. Introduction

Le régime d'intégration fiscale, instauré à l'article 164bis L.I.R., a été introduit dans la loi concernant l'impôt sur le revenu des collectivités, avec effet à partir de l'année d'imposition 1980, par l'article 1<sup>er</sup> de la loi du 1<sup>er</sup> juillet 1981. Depuis son introduction, l'article 164bis L.I.R. a été amendé par :

1) l'article 2, numéro 2 et l'article 3 de la loi du 6 décembre 1990 ;
2) l'article 2, numéro 1 de la loi du 21 décembre 2001 ;
3) l'article 89, lettre e) de la loi du 22 mars 2004 ;
4) l'article 34, alinéa 1<sup>er</sup>, lettre d) de la loi du 15 juin 2004 et
5) l'article 2, numéro 1 de la loi du 9 juillet 2004.

Le règlement grand-ducal du 1<sup>er</sup> juillet 1981 portant exécution de l'article 164bis, alinéa 5 L.I.R. fixe les modalités d'application du régime d'intégration fiscale. Le règlement susvisé, applicable à partir de l'année d'imposition 1980, impose certaines obligations à la société mère et aux filiales faisant partie du périmètre de l'intégration fiscale. A noter encore que suite aux amendements opérés respectivement par l'article 89, lettre e) de la loi du 22 mars 2004 relative à la titrisation et par l'article 34, alinéa 1<sup>er</sup>, lettre d) de la loi du 15 juin 2004 relative à la société d'investissement en capital à risque, la base habilitante dudit règlement figure non plus à l'alinéa 5, mais à l'alinéa 7 de l'article 164bis L.I.R.

1.2. L'objectif de l'article 164bis L.I.R.

L'objectif de l'article 164bis L.I.R. est de permettre à un groupe de sociétés d'opter, dans des conditions déterminées, pour une sorte d'imposition consolidée des sociétés du groupe ou de certaines seulement, sans pour autant mettre en cause l'autonomie patrimoniale des sociétés concernées au regard du droit des sociétés.

Le régime d'intégration fiscale constitue ainsi une entorse à la règle de droit fiscal interdisant toute compensation ou transfert de résultat entre sociétés liées. En effet, l'article 164 L.I.R. dispose à ce sujet que tout transfert de bénéfice à un associé, sociétaire ou intéressé constitue une distribution de bénéfice inapte à diminuer la base d'imposition dans le chef de la société distributrice.

1.3. La portée du régime d'intégration fiscale

L'article 164bis L.I.R. ne vise pas à instaurer une base légale pour l'imposition du résultat consolidé au sens propre d'un groupe de sociétés (à déterminer nécessairement sur la base de

comptes consolidés), mais se limite à permettre aux sociétés intéressées de regrouper ou de compenser leurs résultats fiscaux pendant la période d'application du régime d'intégration fiscale.

Jusqu'à l'année d'imposition 2001 inclusivement, l'alinéa 1er de l'article 164bis L.I.R. stipulait que les filiales à intégrer étaient à considérer comme des établissements stables de la société mère. Bien que l'article 1er du règlement grand-ducal susvisé, applicable à partir de l'année d'imposition 1980, précise que cette assimilation comporte que le revenu imposable du groupe est déterminé en regroupant ou en compensant tout d'abord les résultats fiscaux des filiales et de la mère et en déduisant ensuite les dépenses spéciales à charge des sociétés concernées, la formulation du texte de loi était susceptible d'induire en erreur.

Afin de dissiper toute équivoque en la matière, l'article 2, numéro 1 de la loi du 21 décembre 2001 a amendé l'alinéa 1er de l'article 164bis L.I.R. Dorénavant, le texte de loi précise que l'application du régime d'intégration fiscale entraîne que les résultats fiscaux des filiales admises au régime sont ajoutés au résultat fiscal soit de la société mère résidente, soit de l'établissement stable indigène de la société mère non résidente.

L'alinéa 1er du règlement grand-ducal définit le résultat fiscal. Il s'agit du résultat tel qu'il figure au bilan commercial ou, le cas échéant, au bilan fiscal de chacune des sociétés faisant partie du périmètre de l'intégration fiscale, majoré des montants fiscalement non déductibles et diminué des montants non imposables.

A noter que les sociétés intégrées restent bien entendu obligées de se conformer au principe de pleine concurrence pendant la période d'intégration fiscale.

1.4. <u>Les conditions liées à l'octroi du régime d'intégration fiscale</u>

1.4.1. <u>Les sociétés éligibles</u>

Aux termes de la première phrase de l'alinéa 1er de l'article 164bis L.I.R., le régime d'intégration fiscale est applicable aux sociétés de capitaux résidentes pleinement imposables, dont 95% au moins du capital est détenu directement ou indirectement par une autre société de capitaux résidente pleinement imposable ou par un établissement stable indigène d'une société de capitaux non résidente pleinement imposable à un impôt correspondant à l'impôt sur le revenu des collectivités.

A ce sujet, il y a lieu de noter que jusqu'à l'année d'imposition 2001 incluse, l'application de l'article 164bis L.I.R. était réservée aux sociétés de capitaux résidentes pleinement imposables. Les sociétés de capitaux résidentes sont les sociétés anonymes, les sociétés en commandite par actions et les sociétés à responsabilité limitée dont le siège statutaire ou le principal

établissement se trouve au Grand-Duché. Lesdites sociétés sont pleinement imposables si elles ne bénéficient pas d'une exemption personnelle au sens de l'article 161 L.I.R. ou d'une loi spéciale.

A partir de l'année d'imposition 2002, l'article 2, numéro 1 de la loi du 21 décembre 2001 a élargi le cercle des sociétés éligibles, en prévoyant que la société faîtière peut être soit une société de capitaux résidente pleinement imposable, soit une société de capitaux non résidente pleinement imposable à un impôt correspondant à l'impôt sur le revenu des collectivités qui détient les filiales à intégrer par l'intermédiaire de son établissement stable indigène.

L'existence d'un établissement stable indigène est à vérifier en s'appuyant sur les dispositions du paragraphe 16 de la loi d'adaptation fiscale « Steueranpassungsgesetz » et, le cas échéant, en se référant aux dispositions de la convention tendant à éviter la double imposition (convention D.I.) liant le Grand-Duché et l'Etat de résidence de la société concernée.

A noter qu'en ce qui concerne les sociétés filiales, seules les sociétés de capitaux résidentes pleinement imposables sont éligibles.

1.4.2. Les sociétés formellement exclues du régime

Dans le but d'éviter des constructions fiscales abusives, l'article 89, lettre e) de la loi du 22 mars 2004 relative à la titrisation, ainsi que l'article 34, alinéa 1er, lettre d) de la loi 15 juin 2004 relative à la société d'investissement en capital à risque, excluent respectivement les organismes de titrisation et les sociétés d'investissement en capital à risque (SICAR) au sens des lois susvisées du champ d'application de l'article 164bis L.I.R. Ces dispositions forment les nouveaux alinéas 5 et 6 de l'article 164bis L.I.R.

1.4.3. L'intégration financière

1.4.3.1. Le taux de participation

En ce qui concerne l'intégration financière, l'alinéa 1er de l'article 164bis L.I.R. exige que la société faîtière détienne de manière directe ou indirecte au moins 95% du capital social de la filiale.

Lors de l'introduction du régime d'intégration fiscale, le seuil de détention avait été fixé à 99%. Or, il s'est avéré que ce taux est trop sévère, surtout lorsqu'il est envisagé d'admettre à l'imposition d'un groupe de sociétés des sous-filiales de la société dominante. Voilà pourquoi l'article 2, numéro 1 de la loi du 21 décembre 2001 a abaissé le seuil de l'intégration financière d'une manière générale à 95% avec effet à partir de l'année d'imposition 2002.

Depuis l'année d'imposition 1991, le régime d'intégration fiscale peut cependant être accordé de manière exceptionnelle même si le taux de l'intégration financière de 95% (99% pour les années d'imposition antérieures à l'an 2002) n'est pas atteint, pourvu que certaines conditions soient remplies. Ainsi, il faut notamment que la société faîtière détienne, de manière directe ou indirecte, 75% au moins du capital social de la filiale et que les actionnaires minoritaires représentant au moins 75% de la quote-part de capital non détenue par la société faîtière consentent au régime d'intégration fiscale. Le Ministre des Finances doit par ailleurs confirmer que la participation est particulièrement apte à promouvoir l'expansion et l'amélioration structurelle de l'économie nationale. A noter encore qu'à partir de l'année d'imposition 2002, l'accord du Ministre de l'Economie, exigible pendant les années d'imposition 1991 à 2001, ne doit plus être sollicité, dans le but de simplifier la procédure administrative.

La deuxième phrase de l'alinéa 2 de l'article 164bis L.I.R. précise que la condition de l'intégration financière doit être remplie d'une façon ininterrompue à partir du début du premier exercice d'exploitation pour lequel le régime d'intégration fiscale est demandé. Le fait qu'une participation directe détenue dans une filiale intégrée se transforme en une participation indirecte ou vice-versa n'a aucune incidence sur l'application du régime aussi longtemps que le seuil de détention de la participation (directe ou indirecte) ne tombe à aucun moment au-dessous de 95%.

Par ailleurs, aux termes de l'alinéa 1er de l'article 1er du règlement grand-ducal susvisé, les filiales et la société faîtière doivent ouvrir et clôturer leurs exercices comptables à la même date. Il s'ensuit notamment que dans le cas de la création d'une filiale, le régime d'intégration fiscale ne peut, en principe, être accordé qu'à partir de l'exercice social suivant l'exercice de la création de la filiale.

1.4.3.2. <u>La détention directe</u>

En général, afin que l'on puisse parler d'une participation directe, il faut que la participation ne soit pas détenue par l'intermédiaire d'une personne interposée. Dans cette optique, l'administration a toujours traité la détention d'une participation par l'intermédiaire d'une société fiscalement transparente comme détention indirecte de cette participation.

Suite aux amendements introduits par la loi du 21 décembre 2001, la deuxième phrase de l'alinéa 1er de l'article 164bis L.I.R. spécifie que la détention d'une participation par l'intermédiaire d'un des organismes visés à l'alinéa 1er de l'article 175 L.I.R. (à savoir les sociétés en nom collectif, les sociétés en commandite simple, les groupements d'intérêt

économique, les groupements européens d'intérêt économique et les sociétés civiles) est à considérer comme détention directe proportionnellement à la fraction détenue dans l'actif net investi de cet organisme. La disposition vise en fait tout organisme résident ou non résident qui est à considérer comme transparent au sens du droit fiscal luxembourgeois.

1.4.3.3. La détention indirecte

Jusqu'à l'année d'imposition 2003 incluse, une société de capitaux résidente détenue indirectement par l'intermédiaire d'une société de capitaux non résidente, filiale ou sous-filiale d'une société de capitaux résidente, ne faisait pas partie des sociétés éligibles.

Avec effet à partir de l'année d'imposition 2004, l'article 2, numéro 1 de la loi du 9 juillet 2004 élargit le champ d'application de l'article 164bis L.I.R. en admettant au régime d'intégration fiscale les sociétés de capitaux résidentes pleinement imposables détenues indirectement par le biais d'une société de capitaux non résidente pleinement imposable à un impôt correspondant à l'impôt sur le revenu des collectivités.

Selon le commentaire de l'article 2, numéro 1 de la loi susvisée, est considéré comme un impôt correspondant à l'impôt sur le revenu des collectivités luxembourgeois, « un impôt perçu par la collectivité publique, de façon obligatoire et à un taux d'impôt effectif qui ne peut être inférieur à la moitié du taux d'impôt sur le revenu des collectivités luxembourgeois, soit actuellement 11%. De plus, la détermination de la base imposable doit obéir à des règles et critères analogues à ceux applicables au Luxembourg. ».

Exemple 1 :

M est une société de capitaux résidente belge qui détient par l'intermédiaire de son établissement stable indigène les participations suivantes :

- 99 % dans la société de capitaux résidente F1 ;
- 60 % dans la société en nom collectif résidente F2 ;
- 80 % dans la société de capitaux allemande F3.

F1 détient une participation de 75% dans la société de capitaux résidente F4.

F2 détient une participation de 10% dans la société de capitaux résidente F4.

F3 détient une participation de 40% dans la société en nom collectif résidente F2 et une participation de 15% dans la société de capitaux résidente F4.




L'établissement stable indigène de M détient :

- une participation directe de 99% dans F1 ;
- une participation directe (60% x 10%/100) et indirecte [(99% x 75%/100) + (80% x 40%/100 x 10%/100) + (80% x 15%/100)] de 95,45% dans F4.

En conséquence, F1 et F4 peuvent être intégrées dans l'établissement stable indigène de M.

1.4.4. La procédure d'octroi du régime

Depuis l'introduction de l'article 164bis L.I.R., l'octroi du régime d'intégration fiscale était lié à la condition que les filiales fussent intégrées au point de vue financier, économique et organisationnel dans la société dominante et que le Ministre des Finances acquiesçat au régime. Or, à partir de l'année d'imposition 2002, il faut et il suffit que les sociétés qui sollicitent l'application de l'article 164bis L.I.R. soient intégrées au point de vue financier, c'est-à-dire que la société faîtière détienne de manière directe ou indirecte une participation de 95% au moins dans la ou les filiales à intégrer.

La suppression des critères de l'intégration économique et de l'intégration organisationnelle a permis d'abroger l'agrément ministériel exigible jusqu'ici et de faciliter ainsi la procédure de l'octroi du régime d'intégration fiscale. Dorénavant, il suffit que les sociétés concernées déposent une demande écrite conjointe auprès de l'administration des contributions directes avant la fin du premier exercice de la période pour laquelle le régime est demandé. Bien que le texte de loi ne spécifie pas expressément le service auquel cette demande est à adresser, il vise en fait le bureau d'imposition compétent pour l'imposition de la société faitière. Ce dernier

vérifie la demande et informe les sociétés concernées, ainsi que le(s) bureau(x) d'imposition compétent(s) pour l'imposition de la (des) filiale(s), si les conditions de l'article 164bis L.I.R. sont remplies ou non.

A noter que dans les cas où l'intégration financière s'élève à au moins 75%, sans atteindre 95%, l'article 164bis L.I.R. est seulement applicable si le Ministre des Finances confirme en outre que la participation est particulièrement apte à promouvoir l'expansion et l'amélioration structurelle de l'économie nationale et si les actionnaires minoritaires représentant au moins 75% de la quote-part de capital non détenue par la société mère ou l'établissement stable indigène acquiescent au régime.

1.4.5. La durée minimum du régime

Aux termes de l'alinéa 4 de l'article 164bis L.I.R., l'application du régime d'intégration fiscale est soumise à la condition que les sociétés concernées se lient pour une période couvrant au moins 5 exercices d'exploitation. Le régime se prolonge de manière tacite, à moins que les sociétés impliquées ne renoncent à son application ou que l'une des conditions d'application ne soit plus remplie.

1.4.6. La perte du régime fiscal avant l'expiration de la période minimale

Au cas où les sociétés impliquées renoncent à l'application du régime d'intégration fiscale ou que l'une des conditions prévues par l'article 164bis L.I.R. et le règlement grand-ducal pris en son exécution ne se trouve en fait plus remplie au cours de la période minimale, le régime d'intégration fiscale sera refusé avec effet rétroactif conformément aux dispositions combinées de l'alinéa 4 de l'article 164bis L.I.R. et du paragraphe 4, alinéa 1er de la loi d'adaptation fiscale. Un bulletin déjà émis sera rectifié sur la base des dispositions combinées du paragraphe 4, alinéa 2 de la loi d'adaptation fiscale et du paragraphe 225 de la loi générale des impôts « Abgabenordnung ». A noter que dans les cas susvisés, la prescription prend cours à partir du 1er janvier qui suit l'année au cours de laquelle est survenu l'élément déclenchant la perte du régime.

1.4.7. La perte du régime fiscal après l'expiration de la période minimale

Lorsque les sociétés renoncent au régime d'intégration fiscale après la période couvrant cinq exercices d'exploitation ou si l'une ou l'autre des conditions donnant droit à l'octroi du régime ne se trouve plus remplie après l'achèvement de la période minimale, le régime fiscal prend fin

à partir du début de l'exercice social au cours duquel est intervenu l'événement déclenchant la perte du régime.

1.5. Les modalités d'application du régime d'intégration fiscale

1.5.1. Généralités

Ainsi qu'il a déjà été relevé ci-dessus, les sociétés qui sollicitent l'application de l'article 164bis L.I.R. sont obligées d'ouvrir et de clôturer leurs exercices comptables à la même date. Chaque société du groupe doit déterminer son propre résultat fiscal et déposer une déclaration d'impôt de manière à permettre le calcul de l'impôt dont elles seraient redevables si elles n'étaient pas intégrées. Le résultat fiscal des diverses sociétés s'obtient en prenant comme point de départ le résultat tel qu'il ressort soit du bilan commercial, soit du bilan fiscal, majoré des montants fiscalement non déductibles et diminué des montants non imposables. La société faîtière doit en plus établir une déclaration d'impôt qui regroupe ou qui compense son propre résultat fiscal avec celui de chacune des filiales ou sous-filiales intégrées.

1.5.2. Les corrections à apporter au résultat fiscal global du groupe

L'application du régime d'intégration fiscale peut être à l'origine d'une double imposition ou d'une double déduction. La dernière phrase de l'alinéa 1er du règlement grand-ducal prévoit de neutraliser cet effet par une correction adéquate du résultat global du groupe. A titre d'exemple d'une double déduction citons la constitution par la société faîtière d'une provision pour dépréciation des titres de ses filiales intégrées. La constitution d'une telle provision conduirait en effet à une double déduction dès lors que la société faîtière ajoute à son propre résultat ceux de ces filiales ou sous-filiales. Il échet donc de rapporter cette provision au bénéfice consolidé du groupe. La société faîtière doit de même réintégrer la provision pour dépréciation constituée par une filiale en raison des titres que cette filiale détient dans une sous-filiale, pour autant que ces sociétés font toutes les deux parties du groupe intégré.

La disposition susvisée préconise cependant seulement de neutraliser les effets qui trouvent leur origine dans l'application du régime, mais non ceux qui sont inhérents au système classique de double imposition économique tel qu'il existe, quoique de façon amoindrie, au Luxembourg. Ainsi, par exemple, lorsqu'en cas d'application de l'article 164bis L.I.R., une filiale intégrée distribue un dividende à la société faîtière ou à une autre filiale faisant partie du même groupe intégré, et que la participation détenue par la mère ou la filiale dans la société distributrice ne remplit pas les conditions posées par l'article 166 L.I.R., le dividende reste, sous réserve de l'application de l'article 115, numéro 15a L.I.R., imposable dans le chef des associés respectifs.

Exemple 2 :

La société de capitaux M détient une participation de 100% dans la société de capitaux F1 et une participation de 5% dans la société de capitaux F2. F1 détient une participation de 95% dans F2.




F1 et F2 sont intégrées dans M qui détient de manière directe ou indirecte une participation de 95% au moins dans F1 et dans F2.

Au cours de la période d'intégration fiscale, F2 distribue un dividende brut de 10.000 € (9.500 € à F1 et 500 € à M). Au moment de la mise à la disposition, le dividende payable à M est à soumettre à la retenue d'impôt à la source de 20% en vertu de l'article 146 L.I.R. Le dividende payable à F1 est exempt de la retenue d'impôt à la source conformément à l'article 147 L.I.R.

Dans le chef de F1, le dividende de 9.500 € ne fait pas partie du résultat fiscal puisqu'il est exonéré en vertu de l'article 166 L.I.R. Dans le chef de M, le dividende de 500 € est exempté à raison de 50% en vertu de l'article 115, numéro 15a L.I.R. et figure par conséquent dans le résultat fiscal de ce dernier avec le montant de 250 €.

Le dividende alloué à M est ainsi compris dans le résultat fiscal global du groupe avec le montant de 250 €. Aucune correction n'est à apporter au résultat fiscal global du groupe. Dans ce contexte, il est peu important que la distribution de bénéfice se rapporte à un exercice social compris dans la période d'intégration fiscale ou non.

1.5.3. Le revenu imposable du groupe intégré

Le revenu imposable du groupe intégré, imposable dans le chef de la société faîtière, s'obtiendra finalement en déduisant du résultat fiscal global du groupe intégré les dépenses spéciales (libéralités, pertes reportées) à charge des différentes sociétés faisant partie du périmètre de l'intégration fiscale.

1.5.4. Les dépenses spéciales

1.5.4.1. Les libéralités

En ce qui concerne les libéralités, leur déduction est limitée par les articles 109, alinéa 1er, numéro 3 et 112 L.I.R., ainsi que par le règlement grand-ducal du 18 mars 1990 portant exécution de l'article 112, alinéa 2 L.I.R.

Pendant la période de l'intégration fiscale, seule la société faîtière est à considérer comme sujet d'impôt. Partant, la détermination du montant des libéralités déductibles est à faire au niveau de cette dernière. A cette fin, on regroupe tout d'abord les libéralités au sens de l'article 112 L.I.R. payées par les différentes sociétés intégrées. Ensuite, on détermine le montant déductible en tant que dépenses spéciales dans le chef de la société faîtière en tenant compte des limites fixées par l'article 109 L.I.R. et par l'article 1er du règlement grand-ducal du 18 mars 1990.

Exemple 3 :

La société de capitaux M détient une participation de 95% dans la société de capitaux F. F est intégrée dans M. Pour l'année d'imposition 2004, le résultat fiscal (bénéfice commercial + montants non déductibles – montants non imposables) de M s'élève à 100.000 €, celui de F à – 40.000 €. M a fait un don en espèces de 5.000 € à l'Etablissement public d'enseignement supérieur et de recherche dénommé Université de Luxembourg. F a fait un don en espèces de 1.100 € au Fonds national de la recherche. M et F n'ont pas d'autres dépenses spéciales à leur charge pendant l'année d'imposition considérée.

| | | |
|---|---|---|
| Total des revenus des sociétés intégrées : | 100.000 + (- 40.000) = | 60.000 € |
| Somme des dons des sociétés intégrées à considérer | | |
| comme dépenses spéciales (art. 112 L.I.R.) : | 5.000 + 1.100 = | 6.100 € |
| Maximum déductible (art. 109, al. 1, n° 3 L.I.R.) | 60.000 x 10% = | 6.000 € |
| Revenu imposable du groupe : | 60.000 – 6.000 = | 54.000 €. |

1.5.4.2. Les pertes reportables

1.5.4.2.1. Le sort des pertes essuyées avant l'admission au régime

L'alinéa 2 de l'article 1er du règlement grand-ducal règle le report des pertes qu'une société a essuyées avant son admission au régime d'intégration fiscale. Les pertes en question peuvent être reportées, en vue de l'établissement du revenu imposable du groupe, dans les conditions de

l'article 114 L.I.R., mais seulement dans la mesure où la société qui les a subies dégage un résultat bénéficiaire. Cette restriction découle de l'article 114, numéro 3 L.I.R. qui dispose que seul celui qui a subi la perte peut la porter en déduction.

En ce qui concerne plus particulièrement les pertes réalisées par un établissement stable indigène, il échet de préciser qu'elles sont uniquement reportables si elles résultent d'une comptabilité séparée tenue par la société mère pour l'activité exercée par ledit établissement stable indigène.

Exemple 4 :

La société de capitaux M et ses deux filiales F1 et F2 constituent un groupe intégré au sens de l'article 164bis L.I.R. à partir de l'année d'imposition 2004.

Admettons que la filiale F1 dispose d'un report de pertes de l'année d'imposition 2001 s'élevant à 190.000 €.

Pour l'année d'imposition 2004, le résultat fiscal de M s'élève à 1.000.000 €, celui de F1 à 100.000 € et celui de F2 à – 300.000 €. Les trois sociétés n'ont pas d'autres dépenses spéciales à leur charge.

| | |
|---|---|
| Résultat fiscal de M : | 1.000.000 € |
| + résultat fiscal de F1 : | 100.000 € |
| + résultat fiscal de F2 : | - 300.000 € |
| = résultat fiscal global du groupe : | 800.000 € |

Le groupe intégré peut déduire de ce résultat fiscal la perte reportable de F1, mais seulement à concurrence du résultat bénéficiaire de F1, soit 100.000 €.

| | |
|---|---|
| - report de pertes de F1 : | 100.000 € |
| = revenu imposable du groupe : | 700.000 € |

Pour les années d'impositions à venir, F1 dispose par conséquent d'un report de pertes restant de l'année d'imposition 2001 de 190.000 – 100.000 = 90.000 €.

1.5.4.2.2. Le sort des pertes essuyées au cours de la période d'application du régime

Pendant la période d'application du régime, la société faîtière est la seule à être assujettie à l'impôt sur le revenu des collectivités du chef du résultat fiscal global des sociétés faisant partie du périmètre de l'intégration fiscale. Au cas où le résultat fiscal global du groupe est négatif, cette perte, reportable dans les conditions de l'article 114 L.I.R., est déductible du résultat fiscal global dégagé par les sociétés intégrées au cours des années suivantes, imposable dans le chef de la société faîtière.

En vertu du même principe, l'alinéa 3 de l'article 1[er] du règlement grand-ducal, qui règle le report des pertes réalisées au cours de la période d'intégration fiscale en cas de retour au système individuel d'imposition, dispose que ces pertes sont uniquement reportables par la société faîtière, étant donné qu'elle seule est à considérer comme sujet d'impôt pendant la période d'intégration fiscale.

Exemple 5 :

La société de capitaux M et ses deux filiales F1 et F2 constituent un groupe intégré au sens de l'article 164bis L.I.R. pendant les années d'imposition 1999 à 2003 incluses.

Admettons que le résultat fiscal global du groupe (imposable dans le chef de M) s'élève pour l'année d'imposition 2002 à – 500.000 € (résultat fiscal de F1 : 100.000 € ; résultat fiscal de F2 : - 50.000 € ; résultat fiscal de M : - 550.000 €) et pour l'année d'imposition 2003 à 260.000 € ( résultat fiscal de F1 : 400.000 € ; résultat fiscal de F2 : - 100.000 € ; résultat fiscal de M : - 40.000 €).

Au cours de l'année d'imposition 2004, le résultat fiscal de M s'élève à 100.000 €, celui de F1 à 50.000 € et celui de F2 à 60.000 €.

M, F1 et F2 n'ont pas d'autres dépenses spéciales à leur charge pendant les années d'imposition 2002 à 2004.

Détermination du revenu imposable de M pour l'année d'imposition 2004 :

| | | |
|---|---|---|
| 2002 : | résultat fiscal global du groupe : | - 500.000 € |
| | - dépenses spéciales : | 0 € |
| | = revenu imposable du groupe | - 500.000 € |

| | | |
|---|---|---|
| 2003 : | résultat fiscal global du groupe : | 260.000 € |
| | - dépenses spéciales : | - 260.000 € |
| | = revenu imposable du groupe | 0 € |
| | | |
| | Perte reportable restante : | 240.000 € |
| | | |
| 2004 : | résultat fiscal de M : | 100.000 € |
| | - dépenses spéciales : | 100.000 € |
| | = revenu imposable de M | 0 € |
| | | |
| | Perte reportable restante : | 140.000 € |

L'excédent du report de pertes de l'an 2002 (140.000 €) n'est pas déductible dans le chef des filiales F1 et F2.

1.5.5. La détermination des montants déductibles et imputables de la cote d'impôt du groupe intégré

1.5.5.1. Les bonifications d'impôt

A l'heure actuelle, il existe 5 catégories de bonifications d'impôt :

- la bonification d'impôt pour investissement audiovisuel (loi modifiée du 13.12.1988) ;
- la bonification d'impôt pour investissement en capital-risque (loi modifiée du 22.12.1993) ;
- la bonification d'impôt pour investissement (art. 152bis L.I.R.),
- la bonification d'impôt en cas d'embauchage de chômeurs (loi modifiée du 24.12.1996), et
- la bonification d'impôt pour frais de formation professionnelle continue (loi modifiée du 22.6.1999).

Alors que les deux premières bonifications sont uniquement déductibles de l'impôt sur le revenu des collectivités (majoré de la contribution au fonds pour l'emploi) dû pour l'année d'imposition au cours de laquelle l'investissement a été réalisé, les trois dernières peuvent, à défaut d'impôt suffisant, être déduites de l'impôt des 10 années d'imposition subséquentes.

1.5.5.1.1. Les bonifications d'impôt acquises pendant la période d'application du régime

Pendant la période d'application du régime, chaque société intégrée doit déterminer le montant d'une éventuelle bonification d'impôt comme si elle ne faisait pas partie du groupe intégré, c'est-à-dire, par rapport à ses propres investissements ou dépenses de l'exercice concerné. Toutefois, la société faîtière est la seule qui soit en droit de revendiquer la déduction des bonifications d'impôt ainsi déterminées, puisqu'elle seule est à considérer comme sujet d'impôt pendant la période d'intégration fiscale.

En conséquence, on regroupe tout d'abord les bonifications d'impôt des diverses sociétés du groupe intégré par catégorie et par rang d'ancienneté au niveau de la société faîtière. La détermination du montant déductible de l'impôt dû par la société faîtière se fait ensuite en prenant en considération que les bonifications d'impôt pour investissement en capital-risque et pour investissement audiovisuel (non cumulables) jouissent d'un rang de priorité en cas de concours de différentes imputations, vu qu'elles ne sont ni restituables, ni reportables.

A défaut d'impôt suffisant, les bonifications d'impôt reportables, (c'est-à-dire la bonification d'impôt pour investissement, la bonification d'impôt en cas d'embauchage de chômeurs et la bonification d'impôt pour frais de formation professionnelle continue) peuvent être déduites de l'impôt dû par la société faîtière au cours des dix années d'imposition subséquentes.

A ce sujet, il est indifférent que les sociétés restent intégrées pendant la période décennale ou non. A l'instar du report des pertes réalisées au cours de la période d'intégration fiscale, les bonifications d'impôt acquises par les sociétés intégrées pendant la période d'application du régime fiscal sont, en cas de retour au régime d'imposition individuel, uniquement reportables dans le chef de la société faîtière, qui elle seule est à considérer comme sujet d'impôt pendant ladite période.

1.5.5.1.2. Les bonifications d'impôt acquises avant la période d'application du régime

Les bonifications d'impôt acquises par les divers membres du groupe intégré avant la période d'application du régime d'intégration fiscale, sont reportables par la société faîtière à concurrence de la cote d'impôt théorique dont les membres individuels seraient redevables, s'ils n'étaient pas soumis au régime.

Dans ce contexte, il est peu important que la cote d'impôt effectivement due par la société faîtière du chef du revenu imposable du groupe intégré soit inférieure à la somme des bonifications d'impôt ainsi déterminée ; un éventuel excédent est reportable par la société faîtière dans les conditions de l'article 152bis L.I.R., de la loi modifiée du 24.12.1996 ou de la loi modifiée du 22.6.1999.

Lorsqu'à la fin de la période d'intégration fiscale, il subsiste un éventuel report de bonifications d'impôt acquises avant la période d'application de l'article 164bis L.I.R., qui n'a pas pu être transféré à la société faîtière, ce report continue à rester reportable dans le chef de la société concernée.

<u>Exemple 6</u> :

La société de capitaux M et sa filiale, la société de capitaux F, constituent un groupe intégré au sens de l'article 164bis L.I.R. pour les années d'imposition 1999 à 2004.

Au moment de l'application du régime d'intégration fiscale, M et F disposent d'un report de bonification d'impôt pour investissement (art. 152bis L.I.R.) de 1998 s'élevant respectivement à 90.000 et à 80.000 euros.

Pendant les années d'imposition 1999 à 2003, les résultats fiscaux de M et F sont négatifs. Les résultats fiscaux négatifs cumulés relatifs à cette période s'élèvent à 100.000 euros pour M et à 300.000 euros pour F, de sorte que M, imposable du chef du revenu réalisé par le groupe, dispose d'un report de pertes global de 100.000 + 300.000 = 400.000 euros pour l'année d'imposition 2004.

Pour l'année d'imposition 2004, les résultats fiscaux de M et F s'élèvent respectivement à 600.000 et à 500.000 euros.

Imposition pour l'an 2004 :

| | |
|---|---|
| Résultat fiscal global du groupe : | 600.000 + 500.000 = 1.100.000 |
| - pertes reportables du groupe (1999 – 2003) : | 400.000 |
| = revenu imposable du groupe : | 700.000 |
| | |
| impôt dû conformément à l'article 174 L.I.R. : | 154.000 |
| + fonds pour l'emploi : | 6.160 |
| = montant dû : | 160.160 |

| | |
|---|---|
| - bonifications d'impôt reportables (cf calcul ci-dessous*) : | 135.760 |
| = montant repris au décompte : | 24.400 |

* Détermination des reports de bonifications déductibles de la cote due pour 2004 :

Calcul de l'impôt dû par M et F, si elles n'étaient pas intégrées :

| | M | F |
|---|---|---|
| résultat fiscal : | 600.000 | 500.000 |
| - pertes reportables : | 100.000 | 300.000 |
| revenu imposable : | 500.000 | 200.000 |
| impôt dû conformément à l'article 174 L.I.R. : | 110.000 | 44.000 |
| + fonds pour l'emploi : | 4.400 | 1.760 |
| = montant dû : | 114.400 | 45.760 |

Report de bonifications d'impôt déductibles dans le chef du groupe :

| | |
|---|---|
| Bonification d'impôt déductible par M : | 90.000 |
| + bonification d'impôt déductible par F : | 45.760 |
| Total : | 135.760 €. |

F dispose par conséquent d'un report de bonification d'impôt restant pour 1998 s'élevant à (80.000 – 45.760) 34.240 €.

Si dans l'exemple ci-dessus, les cotes d'impôt du groupe et de M s'étaient élevées à 0 € et celle de F à 45.760 €, M aurait pu reporter et déduire ce montant de la cote d'impôt due pour les années d'imposition 2005 à 2008, que les sociétés aient été intégrées pendant ladite période ou non.

1.5.5.2. <u>Les impôts imputables</u>

Puisqu'au cours de la période d'intégration fiscale, seule la société faîtière est assujettie à l'impôt sur le revenu des collectivités, soit en tant que contribuable résident, soit en tant que contribuable non résident imposable du chef de son établissement stable indigène, la détermination respectivement du montant imputable ou déductible d'un éventuel impôt étranger à charge des sociétés intégrées, ainsi que la détermination du montant imputable ou remboursable d'une éventuelle retenue d'impôt à la source indigène sont à faire dans le chef de la société faîtière.

1.5.5.2.1. Les retenues d'impôt à la source indigènes

A l'heure actuelle, le Luxembourg prélève les retenues d'impôt à la source suivantes :

1. la retenue d'impôt sur les salaires et les pensions (art. 136 L.I.R.) ;
2. la retenue d'impôt sur les revenus de capitaux (art. 146 L.I.R.) ;
3. la retenue d'impôt sur les activités littéraires et artistiques et sur les activités sportives professionnelles (art. 152, Titre 1 L.I.R.) et
4. la retenue d'impôt sur les tantièmes (art. 152, Titre 2 L.I.R.).

Dans le domaine des sociétés de capitaux, seules la retenue d'impôt sur les revenus de capitaux et la retenue d'impôt sur les tantièmes entrent en ligne de compte. En vertu de l'article 154 L.I.R., lesdites retenues sont à imputer sur l'impôt dû par la société faîtière. Au cas où l'impôt dû est inférieur aux retenues à la source prélevées, l'excédent de retenue est à rembourser.

1.5.5.2.2. Les impôts étrangers

Les articles 13, 134bis et 134ter L.I.R., ainsi que les règlements pris en leur exécution, fournissent les dispositions qui permettent de déterminer la fraction de l'impôt étranger imputable sur la cote d'impôt luxembourgeoise. Dans la mesure où l'impôt étranger est supérieur à la fraction d'impôt étranger imputable, l'excédent est déductible en tant que dépense d'exploitation ou frais d'obtention dans les différentes catégories de revenus nets.

1.5.6. L'ordre de déduction des montants déductibles et imputables de la cote d'impôt du groupe intégré

En raison de l'interaction entre la fraction de l'impôt étranger imputable sur la cote d'impôt luxembourgeoise et de celle déductible en tant que dépense d'exploitation ou frais d'obtention dans les différentes catégories de revenus nets, il s'ensuit que la déduction de la fraction de l'impôt étranger imputable sur la cote d'impôt luxembourgeoise est à faire prioritairement par rapport aux autres déductions et imputations.

Ce principe connaît toutefois deux exceptions. En effet, les lois modifiées des 31.12.1988 et 22.12.1993 disposent que la bonification d'impôt pour investissement en capital-risque et la bonification d'impôt pour investissement audiovisuel (non cumulables) jouissent d'un rang de priorité en cas de concours de différentes imputations. La raison en est que lesdites bonifications ne sont ni restituables, ni reportables, de sorte que si la cote d'impôt est inférieure au montant desdites bonifications, l'excédent est définitivement perdu.

Au cas où le montant de l'impôt dû restant après déduction soit d'une bonification d'impôt pour investissement en capital-risque, soit d'une bonification d'impôt pour investissement audiovisuel, est inférieur au montant de la fraction d'impôt étranger imputable déterminé par application des dispositions des articles 13, 134bis et 134ter L.I.R., ainsi que des règlements pris en leur exécution, l'imputation de l'impôt étranger est limitée à ce montant.

Après la déduction ou l'imputation soit de l'une des bonifications d'impôt visées ci-dessus, soit de la fraction imputable de l'impôt étranger, il échet de déduire, le cas échéant, les bonifications d'impôt reportables ( c'est-à-dire la bonification d'impôt pour investissement, la bonification d'impôt en cas d'embauchage de chômeurs et la bonification d'impôt pour frais de formation professionnelle continue). La déduction desdites bonifications se fait dans l'ordre croissant des années d'imposition auxquelles elles se rapportent.

Les retenues d'impôt à la source indigènes occupent la position finale dans l'ordre hiérarchique des divers montants déductibles ou imputables sur la cote d'impôt. Si le montant dû, le cas échéant, après la déduction ou l'imputation des diverses bonifications d'impôt ou de la fraction imputable de l'impôt étranger, est inférieur aux retenues d'impôt indigènes prélevées, l'excédent est à rembourser.

<u>Exemple 7</u>

La société de capitaux résidente F est intégrée dans la société de capitaux M à partir de l'année d'imposition 2004. Pour l'année d'imposition 2004, les résultats fiscaux de M et de F se présentent comme suit :

| | M | F |
|---|---|---|
| Bénéfice (svt bilan fiscal) : | 2.100.000 | - 400.000 |
| + retenue d'impôt sur les revenus de capitaux luxembourgeois : | 1.000 | |
| + impôt étranger imputable en vertu d'une convention D.I. ou en vertu de l'article 134bis L.I.R.: | 20.000 | 1.000 |
| + impôt sur le revenu des collectivités : | 250.000 | |
| + impôt commercial communal : | 140.000 | |
| + impôt sur la fortune : | 10.000 | |
| + dépenses faites dans un but cultuel, charitable ou d'intérêt général : | 2.000 | 3.000 |

| | | |
|---|---|---|
| - revenus exonérés de participations importantes : | 100.000 | |
| - revenus exonérés en vertu de l'art. 115, n° 15a : | 2.500 | |
| résultat fiscal : | 2.420.500 | - 396.000 |

Données concernant M :

1. la retenue d'impôt indigène est en rapport avec un dividende reçu d'une société de capitaux pleinement imposable ;
2. l'impôt étranger est en rapport avec un bénéfice de 100.000 € dégagé par l'établissement stable de M dans l'Etat A avec lequel le Luxembourg n'a pas conclu de convention D.I. (taux : 20%) ;
3. M a fait au cours de l'exercice 2004 un don de 2.000 € à la Croix Rouge Luxembourgeoise ;
4. le revenu exonéré de 100.000 € représente un dividende touché par une société de capitaux résidente dans laquelle M détient depuis 3 ans une participation de 15 % ;
5. M a droit à une bonification d'impôt pour investissement (art. 152bis L.I.R.) de 10.000 € pour l'année d'imposition 2004;
6. M dispose d'un report de pertes de 500.000 € de l'année d'imposition 2000 et d'un report de bonification d'impôt pour investissement de 50.000 € de l'an 2001.

Données concernant F :

1. l'impôt étranger imputable est en rapport avec un dividende brut de 20.000 € provenant d'une filiale résidente de l'Etat A (taux : 5 %) ;
2. F a fait au cours de l'exercice 2004 un don de 3.000 € au Comité Olympique Luxembourgeois ;
3. F a droit à une bonification d'impôt pour investissement (art. 152bis L.I.R.) de 5.000 € pour l'année d'imposition 2004 ;
4. F dispose d'un report de pertes de l'année d'imposition 2001 de 15.000 €.

| | | |
|---|---|---|
| Résultat fiscal global : | 2.420.500 + (- 396.000) = | 2.024.500 |
| - libéralités (art. 109, al.1, n°3 + 112 L.I.R) : | 2.000 + 3.000 = | 5.000 |
| - pertes reportables : | 500.000 + 0 = | 500.000 |
| = revenu imposable du groupe : | | 1.519.500 |

Ventilation de l'impôt étranger payé à l'Etat A :

i = R x t/(1 - t) (formule découlant des dispositions du règlement grand-ducal du 26.5.1979 portant exécution de l'article 13, alinéa 2 L.I.R.)

R = (100.000 – 20.000) + (20.000 – 1.000) = 99.000

Fraction imputable : i = 99.000 x 0,2288/0,7712 = 29.371,37

→ impôts étrangers imputables : 20.000 + 1.000 = 21.000

| | |
|---|---|
| impôt dû conformément à l'article 174 L.I.R. : | 334.290 |
| + fonds pour l'emploi : | 13.371 |
| Montant dû : | 347.661 |
| - impôts étrangers imputables : | 21.000 |
| - bonification d'impôt reportable (cf calcul ci-dessous*) : | 50.000 |
| - bonification d'impôt de l'exercice : | 15.000 |
| - retenue sur revenu de capitaux indigène : | 1.000 |
| = montant repris au décompte : | 260.661 |

Perte 2001 à reporter par F : 15.000,00 €.

* Détermination du report de bonification déductible de la cote due pour 2004 :
impôt dû par M si elle n'était pas soumise au régime d'intégration fiscale :

| | |
|---|---|
| résultat fiscal de M : | 2.420.500 |
| - libéralités : | 2.000 |
| - perte reportable : | 500.000 |
| = revenu imposable : | 1.918.500 |

| | |
|---|---|
| impôt dû conformément à l'article 174 L.I.R. : | 422.070,00 |
| + fonds pour l'emploi : | 16.882,80 |
| = montant dû : | 438.952,80 |

Report de bonification déductible dans le chef du groupe : 50.000 €.

1.5.7. Le paiement de l'impôt dû pour les années d'imposition pendant lesquelles le régime est applicable

En vertu de l'article 164bis, alinéa 4 L.I.R., la société faîtière est redevable de l'impôt sur le revenu des collectivités qui correspond au revenu imposable réalisé par l'ensemble du groupe. Il incombe également à la société faîtière de verser aux échéances fixées par l'article 135 L.I.R. les avances de l'impôt sur le revenu des collectivités calculées sur la base du revenu imposable cumulé du groupe.

2. Le régime d'intégration fiscale en matière d'impôt commercial communal

2.1. Généralités

En ce qui concerne l'impôt commercial communal, le régime d'intégration fiscale « Organschaft » est ancré au § 2, alinéa 2, numéro 2 de la loi modifiée du 1er décembre 1936 concernant l'impôt commercial communal. A ce sujet, il échet de signaler que jusqu'à l'année d'imposition 2001 incluse, il était parfaitement concevable que des entreprises étaient intégrées en matière d'impôt commercial communal sans pour autant être intégrées en matière d'impôt sur le revenu des collectivités.

Or, l'article 6, numéro 1 de la loi du 21 décembre 2001 a, entre autres, aligné le régime d'intégration fiscale en matière d'impôt commercial communal à celui applicable en matière d'impôt sur le revenu des collectivités. Dorénavant, il faut et il suffit qu'un groupe de sociétés soit admis au régime d'intégration fiscale en application de l'article 164bis L.I.R. pour que les sociétés impliquées soient également intégrées en matière d'impôt commercial communal.

Pour de plus amples détails concernant notamment les dispositions applicables pendant une période transitoire aux entreprises qui, sans avoir été intégrées en matière d'impôt sur le revenu des collectivités, étaient intégrées en matière d'impôt commercial communal, il est renvoyé à la circulaire I.C.C. n° 37 du 12 septembre 2003.

2.2. La détermination de la base d'assiette de l'impôt commercial communal

En matière d'impôt commercial communal, le bénéfice d'exploitation correspond au bénéfice tel qu'il a été déterminé conformément aux dispositions de la loi de l'impôt sur le revenu, augmenté ou diminué des montants indiqués aux paragraphes 8 et 9 de la loi concernant l'impôt commercial communal et réduit des pertes reportables au sens du paragraphe 9bis de cette même loi.

Il s'ensuit qu'en cas d'intégration fiscale, le bénéfice d'exploitation du groupe intégré s'obtient en prenant comme base la masse des résultats fiscaux des sociétés impliquées telle qu'elle est déterminée dans le chef de la société faîtière en matière d'impôt sur le revenu des collectivités, et en augmentant ou en diminuant cette base par les montants indiqués aux paragraphes 8 et 9 de la loi concernant l'impôt commercial communal , et en les réduisant, le cas échéant, des pertes reportables suivant le paragraphe 9bis de ladite loi.

Les ajouts et les déductions visés respectivement par les paragraphes 8 et 9 de la loi concernant l'impôt commercial communal sont en rapport avec des montants qui ont été pris en considération lors de la détermination de la masse des résultats fiscaux du groupe intégré et dont l'incidence est à neutraliser pour la détermination de l'impôt commercial communal dû.

Le paragraphe 9bis de la loi susvisée règle le report des pertes. En matière d'impôt commercial communal aussi bien qu'en matière d'impôt sur le revenu des collectivités, seul le contribuable qui a subi la perte peut la porter en déduction. En ce qui concerne les pertes dégagées par les diverses sociétés avant l'application du régime d'intégration fiscale, elles sont ainsi uniquement déductibles des résultats positifs réalisés par la société qui les a subies.

Quant aux pertes réalisées pendant la période d'intégration fiscale, qui s'obtiennent en compensant dans le chef de la société faîtière les résultats fiscaux de chacune des sociétés faisant partie du groupe intégré, et en ajustant ce montant, le cas échéant, par application des dispositions des paragraphes 8 et 9 de la loi concernant l'impôt commercial communal, la société faîtière est la seule à pouvoir invoquer leur déduction, puisqu'elle seule est à considérer comme sujet d'impôt pendant la période d'intégration fiscale.

La masse des résultats fiscaux du groupe intégré, augmentée, diminuée ou réduit des montants prévus aux paragraphes 8, 9 et 9bis de la loi concernant l'impôt commercial communal, est, le cas échéant, arrondi au multiple inférieur de 50 € et diminué à concurrence d'un abattement de 17.500 €. La base d'assiette de l'impôt commercial communal correspond au bénéfice d'exploitation ainsi ajusté multiplié par le taux de 3%.

2.3. <u>La détermination de l'impôt commercial communal dû</u>

Le paragraphe 2, alinéa 2, numéro 2 de la loi concernant l'impôt commercial précise par ailleurs qu'en cas d'application du régime d'intégration fiscale, la société dominée est à considérer, pour la répartition de la base d'assiette entre les communes intéressées, comme établissement stable de la société dominante.

En conséquence, il y a lieu de procéder à une ventilation de la base d'assiette globale du groupe intégré conformément aux dispositions de la loi modifiée du 1er mars 1952 et du règlement

grand-ducal modifié du 20 avril 1962. L'impôt commercial communal dû s'obtient en multipliant les quotes-parts de la base d'assiette globale attribuée aux diverses communes impliquées par le taux communal applicable. Pour de plus amples détails, il est renvoyé à la circulaire ICC n° 36 du 19 mai 2000.

3. Le régime d'intégration fiscale et l'impôt sur la fortune

3.1. Généralités

La loi de l'impôt sur la fortune ne renferme pas de disposition permettant à un groupe de sociétés d'opter pour l'imposition « consolidée » de leur fortune imposable. En conséquence, toute société faisant partie d'un groupe intégré en matière d'impôt sur le revenu des collectivités et en matière d'impôt commercial communal reste assujettie à l'impôt sur la fortune du chef se sa propre fortune imposable.

3.2. La réduction de l'impôt sur la fortune dû par les sociétés intégrées

Néanmoins, le régime d'intégration fiscale ne reste pas sans effet sur l'impôt sur la fortune dû par les diverses sociétés faisant partie d'un groupe intégré. En effet, suite à l'introduction, avec effet à partir de l'assiette générale au 1.1.2002, du paragraphe 8a dans la loi de l'impôt sur la fortune, les sociétés de capitaux peuvent bénéficier, dans des conditions déterminées, d'une réduction de l'impôt sur la fortune dû au titre d'une année d'imposition donnée. Ainsi, les sociétés qui s'engagent à inscrire, en affectation du bénéfice d'une année d'imposition déterminée, une réserve à leur bilan destinée à être maintenue pendant les 5 années d'imposition suivantes, bénéficient d'une réduction de l'impôt sur la fortune s'élevant à 1/5 de la réserve constituée, sans pour autant dépasser l'impôt sur le revenu des collectivités, majoré de la contribution au fonds pour l'emploi, dû avant d'éventuelles imputations au titre de la même année d'imposition.

Or, pendant la période d'intégration fiscale, seule la société faîtière est à considérer comme sujet d'impôt au regard de l'impôt sur le revenu des collectivités, de sorte qu'au sens littéral, aucune filiale intégrée ne pourrait bénéficier pendant l'application du régime d'une réduction de l'impôt sur la fortune. Tel n'est cependant pas le cas, puisque l'alinéa 5 du paragraphe 8a de la loi concernant l'impôt sur la fortune prévoit qu'en cas d'application du régime d'intégration fiscale, la réduction globale de l'impôt sur la fortune au niveau des différentes sociétés du groupe ne peut pas dépasser le montant de l'impôt sur le revenu des collectivités, y compris la contribution au fonds pour l'emploi, dû avant imputations par le groupe. Il s'ensuit clairement

que le paragraphe 8a de la loi concernant l'impôt sur la fortune s'applique à chacune des sociétés faisant partie d'un groupe intégré.

Dans ce contexte, il reste à clarifier qui peut ou doit constituer la réserve correspondant au quintuple de la réduction de l'impôt sur la fortune demandée par une société faisant partie du groupe intégré. A première vue, plusieurs solutions seraient concevables : la société faîtière, chaque société à concurrence du quintuple de la réduction de l'impôt sur la fortune sollicitée, ou encore chaque société selon ses bénéfices ou réserves disponibles.

Le paragraphe 8a de la loi de l'impôt sur la fortune retient la troisième solution. Ainsi, en cas d'intégration fiscale, la constitution de la réserve du quintuple de la réduction de l'impôt sur la fortune sollicitée par les diverses sociétés faisant partie du groupe intégré, peut se faire à travers les bilans des différentes sociétés du groupe. En conséquence, il est parfaitement possible qu'une société intégrée, qui n'aurait pas pu demander une réduction de l'impôt sur la fortune, si elle avait été imposée d'après le régime normal, est en droit de le faire parce que la réserve au montant du quintuple de la réduction sollicitée est constituée par une autre société faisant partie du groupe intégré.

Pour permettre de faire le suivi de l'emploi des diverses réserves, il est indispensable que les sociétés concernées fassent la répartition des réserves par rapport aux années d'imposition pour lesquelles une réduction de l'impôt sur la fortune a été demandée, ainsi que par rapport aux diverses sociétés dans le chef desquelles cette réduction est sollicitée, au cas où une société intégrée se charge de la constitution de la réserve pour compte d'une autre société du groupe. En effet, si la société disposait de manière partielle de l'une ou de l'autre des réserves constituées avant la période quinquennale au cours d'une année d'imposition donnée, la réduction correspondante de cette réserve entraînerait que dans le chef de la société concernée la cote de l'impôt sur la fortune de l'année d'imposition en question serait augmentée à raison de 1/5 du montant de la réserve utilisée.

En ce qui concerne plus particulièrement les dispositions du § 8a de la loi de l'impôt sur la fortune, il est renvoyé au point 3 de la circulaire Eval. n° 51/I. Fort. n° 42 du 10 octobre 2002.

<u>Exemple 8 :</u>

Reprenons les données de l'exemple 7.

M sollicite une réduction de l'impôt sur la fortune au 1.1.2004 de 50.000 € et s'engage par conséquent à constituer une réserve de 250.000 € en affectation du bénéfice de l'an 2004 dans son bilan de l'an 2005. F sollicite une réduction de l'impôt sur la fortune de 1.000 €. Vu que F ne dispose pas de réserves libres et qu'elle a réalisé une perte au cours de l'année d'imposition

2004, M s'engage à constituer la réserve correspondant au quintuple de la réduction de l'impôt sur la fortune demandée par F en affectation du bénéfice de l'an 2004 dans son propre bilan de l'an 2005.

Réduction globale de l'impôt sur la fortune sollicitée :

| | |
|---|---|
| 50.000 + 1.000 = | 51.000 € |
| Impôt sur le revenu des collectivités dû pour l'année d'imposition 2004 : | 347.661 € |
| Réserve constituée par M (dont 5.000 pour F) : | 255.000 € |

Réduction de l'impôt sur la fortune au 1.1.2004

| | |
|---|---|
| - dans le chef de M : | 50.000 € |
| - dans le chef de F : | 1.000 € |
| | 51.000 € |

Luxembourg, le 27 septembre 2004

Le Directeur des Contributions